1. EXECUTORS AND ADMINISTRATORS — CONSTRUCTION OF . TRUST DEED—JURISDICTION OF PROBATE COURT.

> Where a trust deed is made by legatees to · an executor, to enable him to carry out the provisions of the will, both instruments should be construed together, to arrive at the full meaning of the deed, and, therefore, the probate court has jurisdiction of a controversy arising thereunder between the trustee and the heirs of the beneficiaries of the trust.

2. SAME—FAILURE TO ACCOUNT.

> An executor who has in his hands a large fund belonging to the estate, as shown by his last accounting to the probate court, may be required by such court, under 2 How. Stat. § 6809, upon his failure to submit the further reports provided for by 2 How. Stat. § 5957, to render an accurate account of all property in his hands as such executor, although the legatees have made him a trustee of the entire estate for the purpose of carrying out the provisions of the will.

*Certiorari* to St. Clair; Eldredge, J., presiding.   Submitted January 7, 1896.   Decided May 12, 1896.

In the matter of the petition of Mehitable D. Sanborn, upon appeal from the probate court, the circuit judge entered an order requiring John P. Sanborn, as executor of the estate of Mary Jane Sweetser, deceased, to render an account and to file a new bond, and from this order he brings *certiorari*.   Affirmed.

*A. R. Avery* and *O'Brien J. Atkinson* (*N. E. Thomas* and *H. M. Duffield*, of counsel), for plaintiff in *certiorari*.

*H. W. Stevens* (*Elbridge F. Bacon* and *P. H. Phillips*, of counsel), for defendant in *certiorari*.

---

[1] Rehearing denied July 8, 1896.

MOORE, J.   Alvah Sweetser and James W. Sanborn,
for many years prior to 1869, were associated in business
as lumbermen, merchants, and bankers, at the city of
Port Huron, under the firm name of Sweetser & Sanborn.
They owned lumber lands in nearly all the pine counties
of the State, to some of which they had full title, but
much the larger portion were owned in common with
other persons and firms.   Sweetser died in 1869, leaving
all his property to his wife, Mary Jane Sweetser, who was
a sister of Sanborn.   After Sweetser's death the business
was carried on under the firm name of James W. Sanborn
& Co.   James W. Sanborn died in April, 1870, leaving
a will by which John P. Sanborn and Newell Avery were
made his executors and trustees.

Mary Jane Sweetser died in October, 1870, leaving a
will, and an estate which was subsequently appraised at
upwards of $205,000.   By the terms of her will, made in
May, 1870, she created specific bequests to the extent of
$209,000.   She also made provision, in the final item of
the will, that the residue of the estate, after payment of
all debts and legacies, should be divided equally between
four ecclesiastical societies named, and that John P. San-
born and Newell Avery should be executors.   October 1,
1870, she made a codicil revoking the final item of her
will, and providing for the disposal of the residue of the
estate in equal parts among her four brothers and sisters,
or their heirs.   It is claimed that this codicil revoked the
appointment of the executors, previously named.

It was apparent to both executors that the estate would
not pay the legacies and debts, if closed up in the course
of ordinary proceedings in probate court; and as substan-
tially all the estate was held in jointure with the Sanborn
estate, in which they had qualified as executors and
trustees, and Avery was also personally interested in
many of the lands, they did not feel at liberty to accept
administration of the estate unless matters were so
arranged that the general business could be continued in
the manner it had formerly proceeded.   As all persons

interested in the estate wished the business to be continued, a conveyance was made by the residuary legatees named in the codicil, by the terms of which the entire estate was conveyed in fee simple to Sanborn and Avery in trust to carry out the provisions of the will. The *habendum* and *tenendum* clause of said deed reads as follows:

"To have and to hold the same, however, in trust, and to and for the uses and purposes of performing and carrying out the provisos, interests, and purposes of the said will of the said Mary J. Sweetser, and for no other purpose, and to which said will special reference is hereby made, with the same effect as though the same were set out herein at length; and this conveyance is upon the further trust, use, and benefit of, all and singular, the legatees and beneficiaries entitled under and by virtue of said will of said Mary J. Sweetser, that any, each, and all of the said legatees and beneficiaries may release and acknowledge payment to the said parties of the second part, in their capacity of and as such executors, of their respective legacies or bequests so contained in said will, and the same shall still be payable under and by virtue of this conveyance and disposition, the same as it would were a power of sale contained in said will; and this conveyance is made to the end and purpose that the terms, conditions, and provisos in said will may be carried out and performed under this conveyance, and to the same effect, and upon the further trust and authority that the parties of the second part proceed and sell, either at public or private sale, as soon as possible without necessary loss from any disposition or conversion of property into money, and to make, execute, acknowledge, and deliver all necessary and proper deeds, conveyances, and bills of sale, of, all and singular, said property, real, personal, and mixed, whereby the purchaser or purchasers shall have conveyed to them all such title and interest in said estate and property as the said Mary J. Sweetser might or could have conveyed in her lifetime. And the said parties of the second part, in the execution of this trust, and the payment of the legacies as provided for in said will, and in all their duties hereunder, shall and will perform the same in all respects, and be governed in all their acts, the same as they would, and as the law requires

of them, under said will, did the same contain the same powers of disposition and sale as is above specified and set forth."

This deed was recorded.

On the date of the execution of the deed, application was made to the probate court for the allowance of the will, and it was admitted to probate.  Sanborn and Avery gave separate bonds as executors, each in the sum of $50,-000.  The sureties on Sanborn's bond were John Hibbard and John Johnston; the former of whom is now dead, and the latter insolvent.  In 1875 the executors filed accounts in the probate court for the years 1871 to 1874, inclusive; and from time to time statements of account were filed and allowed by the probate court until and including the year 1882.  These statements, after the death of Avery, which occurred in 1877, were made and filed by John P. Sanborn, who represented himself as sole executor.  The last account filed shows a balance of personal property remaining in Sanborn's hands amounting to $63,103.23. Afterwards, in 1885, Sanborn furnished to one of the parties interested in said estate a memorandum of property in his hands belonging to the estate, showing land contracts, mortgages, bills receivable, etc., drawing interest, at $91,-000, and real estate valued at $116,465.

Two of the original residuary legatees were Peter Sanborn and Hannah Merrill, both of whom died some years ago, leaving as an heir at law William H. Sanborn, who likewise died in 1892, leaving as his heir at law Mehitable D. Sanborn, his mother.  Mehitable D. Sanborn is the petitioner in this proceeding.  January 10, 1893, she filed a petition in the probate court of St. Clair county, asking that John P. Sanborn be required to file a new bond and an account in the probate court as executor of the estate of Mary Jane Sweetser, deceased.  The probate court ordered Sanborn to file a new bond in the sum of $50,000. Sanborn appealed to the circuit court, and the said court made an order requiring him to give a new bond in the sum of $100,000, and to file in the probate court of St.

Clair county his account as executor, within 30 days. Sanborn took no exceptions to the findings of fact of the circuit judge, but did except to the conclusions of law based upon such findings.

The appellant alleges—

"That the petitioner, Mehitable Sanborn, had no such interest in the estate as authorized her to file a petition under 2 How. Stat. § 6006, which provides that such order may be made 'on the petition of any person interested;' that it is undisputed that whatever right William H. Sanborn had in the estate of Mary Jane Sweetser, as heir of two of the residuary legatees, descended to the petitioner, but it is claimed by the appellant that the legal title to the property of the said estate was in John P. Sanborn, under the trust deed, and therefore there was no realty to descend to the petitioner, and her only remedy is in equity."

The appellant further alleges that the circuit court erred in the conclusion that appellant holds the residue of the estate of Mary Jane Sweetser in his capacity as executor, and must account for it to the probate court, when he in fact holds such estate as a trustee, and not as an executor, and can only be compelled to account for it in a court of equity; that Sanborn and Avery held all the property of the estate under the trust deed, as trustees, and in no sense as executors, except so far as necessary to pay the expense of administration, debts, and legacies; and, as these had all been paid long before the filing of the petition in this cause, that the probate court was powerless to act in the premises. It is claimed that the petitioner in this proceeding in probate court gets whatever right she has as the heir at law of two of the residuary legatees named in the will of Mrs. Sweetser, and that, as these residuary legatees had joined in a trust deed to Sanborn and Avery, whatever she gets comes as from a trust fund in the hands of Sanborn, not as executor under the will, but as trustee under his trust deed, and that the accounting must be had between the petitioner and the trustee, not in probate court, but in a court of

equity. It is also claimed that there is nothing in the probate court to which a bond could attach, and no accounting in that court could relieve the trustee of his trust; that it was a personal trust, which could be fulfilled only by performance or surrender to the beneficiaries; that it could not be surrendered to the probate court; that, the title to all the estate being in these trustees, there was nothing from it which descended on the death of the residuary legatees, through which petitioner claimed; and that, therefore, she bore no such relation to the estate as to give the probate court jurisdiction to act upon her petition.

The petitioner contends that the giving of the trust deed by the residuary legatees, for the purpose of conferring power on the executors of conveying the real estate without an application to the probate court, was simply to enable the trustees to carry out the provisions of the will; that the trust deed and the will are to be read together, and that, when so read, the construction to be given them is that, instead of creating a trust, they simply conferred a power; that the probate court did not lose jurisdiction, but should retain it, and had the right to cite the executors, subsequently appointed, into the court to render a statement of their account, or to exact from them additional security by giving a new bond; that it is sufficient if such an interest is shown as satisfies the court that, if the fund is lost or depreciated by the executor or trustee, petitioner will be injured; that in rendering an account, or giving a new bond, the party rendering such account or furnishing such bond does not give up or surrender any vested rights; that the court will not stop to consider the question of what tribunal should wind up the estate, but, it being apparent that the appellant has come into the possession of property upon the strength of his appointment as executor, and that he has given a bond therein, he must, of necessity, be required to keep that bond good by furnishing sufficient sureties as often as the court directs him so to do, and he must also render an

account as often as the court may desire to inquire into the condition of affairs; that an order requiring an executor to give a bond or to file additional security is not appealable, and that an order requiring an executor to file an account cannot be appealed from, provided that it appear that there is an estate pending in the probate court which is unsettled; that the extent of the interest of a person filing a petition in a matter of this character cannot be litigated in a proceeding asking for the filing of an account, or seeking additional security. The petitioner also raises the question as to whether the appellant, by the action which he has taken, is estopped from denying the jurisdiction of the probate court.

The case comes to this court on *certiorari*, the parties asking the relief previously stated.

The important question involved in this case—that is, whether the equity court or the probate court has jurisdiction of the controversy—also arose in *Re Sanborn's Estate, ante*, 191. The opinion written in that case by Mr. Justice MONTGOMERY is decisive here. In the *Sanborn Case* whatever trust was created arose from the terms of the will. In this case the trust was created by deed, but an examination of the record will show that the trust deed was given to enable the executors and trustees to carry out the provisions of the will. The will and the trust deed should be read together, to arrive at the full meaning of the trust deed. In addition to what is stated by Justice MONTGOMERY in the *Sanborn Case*, it is only necessary to say that the record in the probate court discloses that, according to the last report of Mr. Sanborn as executor, a large fund was in his hands, which is unaccounted for in the records of the probate court. Section 5957, 2 How. Stat., requires the executor or administrator to render his account within one year from the time he receives his letters testamentary or of administration, and to make "such further accounts of his administration from time to time as shall be required by the court until the estate shall be wholly settled." This has

not been done by Mr. Sanborn.    Where there has been a failure to comply with the provisions of the foregoing section, it is provided by section 6809, 2 How. Stat., that it shall be the duty of the judge of probate to notify and require the executor to render an accurate account of all moneys and other property in his hands as executor, and the proceeds and expenditure thereof.    As Mr. Sanborn qualified in the probate court as an executor, and, at the date of his last report, had funds in his hands as executor, it is his duty, under the statute, to render to the probate court an account of what has become of them.

It is not necessary to discuss the other questions involved.

The order of the circuit court is affirmed, with costs.

The other Justices concurred.