## Myers's Estate.

The facts appear from the opinion of

Van Dusen, J., Hearing Judge.—Max Myers made a deed of trust on September 16, 1930, wherein his two brothers and the Bankers Trust Company were trustees, and the beneficiaries were to be "in accordance with the provisions as set forth in my last will and testament."

The subject matter of the trust was six policies of insurance on his own life, totaling $22,021.20, of which the beneficiaries were the said trustees. The deed reserved the power to revoke it, and the right to receive dividends, surrender values and maturity values of the policies. The policies reserved the right to change the beneficiary. If there was no named beneficiary, I assume that the proceeds of the policies would go to the estate of the insured.

By his will dated the same day, the settlor directed the payment of his debts, gave some money legacies, and some money legacies in trust, and gave the residue in trust, the beneficiaries of the trusts being sisters, nephews and nieces. He made no reference to the power contained in the deed of trust.

Decedent died September 24, 1930, eight days after making this deed and will.

The amount payable on the policies was $22,021.20, which was paid to the trustees under the deed of trust. The register of wills assessed 10 per cent. transfer inheritance tax on the net sum of $20,390.30, and the trustees under the deed of trust take this appeal.

The register in his answer defends his assessment on the grounds that the policies were part of decedent's estate, that transfer was effected by his will; that the powers which he reserved retained full control in him, and that the whole transaction was a scheme to avoid taxes.

It is also intimated that the transfer (if there was one) was in contemplation of death, and evidence was offered on the subject.

1. I find as a fact that the deed of trust of September 16, 1930, was not executed in contemplation of death. The settlor was fifty-one years of age, in active and successful business. Though he had had a heart attack three years before and had been advised to refrain from physical activity, he had apparently recovered, and had not seen his family doctor in a year and a half. To

534

his family and friends he seemed in good health and spirits, and discussed a Mediterranean cruise for 1931. He executed his will on the same day as the deed of trust, but this was only natural, and no more significant than the execution of any other will. He died suddenly of an embolism, or obstruction in the arteries, which stopped the flow of blood.

2. The substance of the other grounds given in support of the assessment is that decedent retained full control in his lifetime, and that his possession and enjoyment ceased only at his death. With this I agree.

3. But the question remains—and it lies underneath all the others—as to whether the proceeds were a taxable part of decedent's estate transferred at his death. If not, then there was no scheme to avoid taxes, and it is immaterial that a testament was part of the method of making the plan effective.

The Inheritance Tax Act of 1919, found at section 72 PS (page 333), 2301, as amended by the Act of March 28, 1929, P. L. 118, provides:

"The proceeds of policies of life insurance, payable otherwise than to the estate of the insured, and whether paid directly by the insurer to beneficiaries designated in the policies, or to a trustee designated therein, and held, managed, and distributed by such trustee to or for the benefit of such persons or classes of persons under such plan and in such estates as may have been prescribed by the insured under agreement with such trustee, shall not be included in imposing any tax under this section."

These policies are not payable to the estate of the insured. The right to name the beneficiaries by his will is by no means the same thing. This insurance money will go to the legatees of Max Myers, but it will not pass through the hands of his executors, or be liable for his debts or administration expenses.

The case is very like those in which a power of appointment granted by A to B is exercised by B's will in general terms. As the appointed estate is not liable for B's debts, it is not blended with B's own estate, and is not liable to tax as part of B's estate: Valentine's Estate, 297 Pa. 99.

The appeal is sustained and the assessment of transfer inheritance tax by the register in the sum of $2039.04 with respect to the insurance moneys above mentioned is set aside.

*H. Horace Dawson*, for exceptant; *Louis A. J. Robbins*, contra.

STEARNE, J., March 11, 1932.—The question involved is the transfer inheritance tax liability of proceeds of life insurance policies, where the insured created an inter vivos insurance trust, whereby the policies were assigned to a trustee, with direction to collect the proceeds, invest same, and to "pay over and apply the net income and hold, pay over and distribute the capital or principal of said trust in accordance with the provisions as set forth in my last will and testament."

Whatever tax liability exists is imposed by the Act of June 20, 1919, P. L. 521, amended by the Acts of May 14, 1925, P. L. 717, and March 28, 1929, P. L. 118.

It may be stated at the outset that it is a well-settled principle of law that an inheritance tax law should be construed strictly against the government and in favor of the taxpayer, and any doubt as to the taxability of a particular fund should be resolved in favor of the citizen: Barber's Estate, 304 Pa. 235, 240.

The Act of 1929, *supra*, specifically provides:

"The proceeds of policies of life insurance, payable otherwise than to the estate of the insured, and whether paid directly by the insurer to beneficiaries designated in the policies, or to a trustee designated therein, and held, managed, and distributed by such trustee to or for the benefit of such persons or

classes of persons under such plan and in such estates as may have been prescribed by the insured under agreement with such trustee, shall not be included in imposing any tax under this section."

The decisive inquiry is whether the direction to the named trustee to "pay over and apply (the insurance proceeds) . . . in accordance with the provisions as set forth in my will" is the equivalent of a direction to "pay to the estate of the insured."

Apparently the provisions of the Act of 1929 have not, as yet, received judicial construction in this Commonwealth. However, upon principle, and by authorities in other states, it seems very clear that if the proceeds of such insurance policies pass to designated beneficiaries the transfer is not taxable (Tyler v. Treasurer, 226 Mass. 306; In re Parsons's Estate, 102 N. Y. Supp. 168), whereas, if such insurance is payable to the estate it is so taxable (In re Knoedler, 140 N. Y. 377; In re Reed, 243 N. Y. 199). The distinction seems very clear. Where payable to the estate, the insured, by his contract, creates an additional asset, which, like any other claim of the estate, is collected by the personal representative and becomes a part of the estate itself. However, where beneficiaries are designated, it creates a situation very similar to third party contracts. The insured, by his contract with the company, creates a contractual relation for the benefit of his beneficiaries, and upon the death of the insured, the recovery is directly by the beneficiaries against the company, with which the insured's estate has no concern: Gleason & Otis on Inheritance Taxation (4th ed.) 417; Handy: Inheritance and Other Like Taxes, 206; Pinkerton & Millsaps "Inheritance and State Taxes," 161.

What was intended, under the circumstances of this case, is a matter for judicial construction. Where there are two or more instruments creating, defining or relating to a trust, they may be construed together to effectuate the intention of the creator. In Greenfield's Estate, 14 Pa. 489, an absolute deed, together with a declaration of trust by the grantee, were read together to define a trust. This leading case has been frequently followed in this and other jurisdictions. See King v. York Trust Co., 278 Pa. 141, 145. Thus, where an absolute conveyance was made to A, "as he is trustee for B," the nature of the trust may be ascertained by a reference to a will creating B's trust, even though the will is not referred to in the deed: Cleveland v. Hallett, 6 Cush. (Mass.) 403. Or, where a deed of trust is executed by legatees to carry out the terms of a will, both instruments must be read together: In re Sweetser's Estate, 109 Mich. 198. A trust deed and a confidential writing delivered at the same time, to be opened and read afterward, are to be construed together: Van Cott v. Prentice, 104 N. Y. 45.

Because the deed, in terms, refers to the provisions of the will, both documents must be read together: Comly's Estate, 16 D. & C. 336.

Our present inquiry, therefore, resolves itself into this problem: Did the settlor intend, by the use of the language he employed, to pass this insurance fund into his estate, and as part thereof, distribute it in accordance with the terms of his will? Or, perhaps, a more accurate statement is, was the effect of a transfer to a trustee to distribute in accordance with the terms of the will equivalent to making the insurance fund a part of his estate? After mature reflection we negative such intent. We do not visualize the settlor's intent to leave two estates; one relating to his individual accumulation, and which is to be administered by his executor under the terms of the will, and another estate, created by an insurance fund, coming into being by the fact of his death, and being administered by a trustee named in the deed, and distributed by such trustee, according to the terms of the will, in conjunction with the executor. It

would seem ridiculous to consider (as the fund is admittedly not payable to the executor) that the executor and trustee, as a species of legal Siamese twins, jointly administer and distribute twin estates. Rather, we construe this provision to mean that the trustee is to pay to the beneficiaries named in the will in the proportion and in accordance with its provisions. This appears to us to be the logical and obvious intent of the trust provisions.

As we have construed the fund to be payable to beneficiaries and not to the estate, it follows, therefore, that under the terms of the Act of 1929, no tax is due.

We are not unmindful of those decisions relating to the taxability of estates where the settlor exercises dominion over the trust res during his lifetime, and effects no complete transfer, and directs the disposition of the fund after his death: Williamson's Estate, 16 D. & C. 245, and Hurley's Estate, 16 D. & C. 521. In such cases the fund is unquestionably taxable. All of those cases relate to a trust res which was possessed by a decedent and was actually transferred by him to a trustee. The inquiry is always whether the scheme is testamentary or was an absolute and concluded inter vivos transfer. The distinction between those cases and the present one is that in insurance funds, the proceeds are exempted from taxation unless payable to the estate. If not payable to the estate, as we have decided, it would seem, under the act, to be immaterial, for taxation purposes, to whom or how the beneficiaries are ascertained, or whether the scheme is or is not testamentary.

The exceptions are dismissed, and the ruling of the hearing judge sustaining the appeal is affirmed.