## Barber's Estate.

Argued January 13, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*G. Claude Bedford,* with him *Joseph A. Rainville, Jr.,* and *Ormond Rambo,* for appellant, in No. 112, and *Morgan, Lewis & Bockius* and *Harold L. Ervin,* for appel-

lant, in No. 113.—No tax is payable under the agreements: Honeymann's Est., 98 N. J. Eq. 638; McCormick's Est., 15 Pa. C. C. R. 621.

Should it so happen that this court comes to the conclusion that a transfer inheritance tax is payable, then appellant claims that the tax should be assessed only on the value of the several annuities payable to the decedent.

*Philip S. Moyer,* Deputy Attorney General, with him *Harry J. Markiver* and *William A. Schnader,* Attorney General, for the Commonwealth, appellee.—The gifts here made were intended to take effect in enjoyment at or after the donor's death: Reish v. Com., 106 Pa. 521; Seibert's App., 110 Pa. 329; DuBois's App., 121 Pa. 368; Lines's Est., 155 Pa. 378; Todd's Est., 237 Pa. 466; Houston's Est., 276 Pa. 330; Dolan's Est., 279 Pa. 582.

OPINION BY MR. JUSTICE KEPHART, April 13, 1931:

The register of wills made a supplemental appraisement in the estate of Margaret M. Barber for the purpose of assessing an inheritance tax. It covered a trust fund valued at $500,000 which decedent, during her lifetime, had transferred to the Board of Missions for Freedmen of the Presbyterian Church hereinatfer referred to as the Board. As a result, a tax was assessed amounting to $30,000. The orphans' court sustained the assessment, and this appeal by the Board and by the executors followed. The questions are the same in both cases.

The trust fund of $500,000 was transferred under five separate instruments. In all of them, the term "annuity gift" was used. Regardless of what a gift may be called in determining the validity of the tax, the legal effect of the terms and conditions of the various instruments must be ascertained.

The first agreement of 1916 recited that the grantor desired "to make an annuity gift" of $100,000 to the

Board for the endowment of the Barber Memorial Seminary at Anniston, Alabama, the principal "to be held in perpetuity and the income only to be used" toward the running expenses or the enlargement or equipment of such institution. It provides that the Board "shall pay to Mrs. Barber......interest at the rate of 5% per annum upon the principal given until her death. At her death the income of her annuity gift is to be used as above set forth."

Another similar gift of $100,000 was made shortly afterward, in 1918, the only difference being the rate of percentage to be paid to Mrs. Barber, which was 4% instead of 5%.

A third agreement in 1920 referred to the two prior agreements and gave an additional $200,000 with interest at 4% to be paid to Mrs. Barber during her lifetime. This agreement introduced a new feature in that the Board was to pay Mae Lynd, during her lifetime, yearly interest at 5% on $50,000. At the death of Mae Lynd, the income was to be used as the other income for the seminary as stated in the foregoing agreements. The Board in this instrument declares that it "holds the above recited fund of $400,000 [the total sum covered by the three agreements] in trust to apply the income from the same, after the payment of the annuities above provided [during the lives of the donor and Miss Lynd] ......and after the death of the persons named, the whole of the income" to the Barber Memorial Seminary as heretofore set forth.

The fourth agreement made a further contribution of $50,000 on the same terms and conditions with the interest rate at 5%. In this there is an acknowledgment by the Board that they would apply the income from the $450,000 held in trust, after the payment of the annuities, to the running expenses, etc., of the institution mentioned. The final payment of $50,000 was made on October 20, 1925. Interest at the rate of 5% was to be paid to Mrs. Barber under this instrument which also

contained an acknowledgment by the Board similar to the preceding ones.

The Act of June 20, 1919, P. L. 521, provides that a tax shall be imposed on the transfer of any property by deed or gift made in contemplation of the death of the grantor or donor or intended to take effect in possession or enjoyment at or after death. The fact that property, a sum of money, was transferred by being placed in a trust, will not affect its taxability if the profits (income) from it were intended to take effect in enjoyment after death. The Commonwealth's power to levy such tax, under such circumstances, cannot be doubted.

Did the various instruments here involved create such a pecuniary benefit in such fund, and was it intended by the instruments that it should take effect in enjoyment after death? If it did, the tax will follow.

It is the Commonwealth's contention that the beneficial enjoyment of the trust fund remained in Mrs. Barber, during her lifetime, and at her death this beneficial enjoyment took effect when all the income was to be applied for the benefit of the seminary by the trustee, the Board.

Appellant's contention is that the grantor in requiring interest to be paid to her at a given rate percentage each year was merely using a convenient method to determine the amount of an annuity, and that the word "interest" was not used in the sense of compensation for the use of money, but to designate or measure the annuity payable, and, further, that this annuity became a personal obligation of the Board, dissociated from the fund itself, which had become part of its property absolutely when the agreements were executed and the trust fund delivered, and, therefore, that it was not subject to a tax.

While the legislature in its tax statutes is not supposed to assume a hostile attitude toward citizens, it frequently occurs that its administrators reach out to bring within the grasp of the statute subjects which

only conjecture may bring within its intent. A tax statute like the collateral inheritance tax should receive a reasonable construction to effectuate the purpose intended. A subject-matter should not escape taxation that is fairly brought within the act when no purpose is expressed for an exemption: Phila. v. Ridge Avenue Passenger Ry. Co., 102 Pa. 190. On the other hand, it is not the function of a judicial tribunal "to impose taxation, which is a species of confiscating by a strained construction of doubtful legislation": Com. v. New York, L. E. & W. R. Co., 145 Pa. 57, 64; Com. v. Lehigh Valley R. Co., 129 Pa. 429, 451. Words should be interpreted in their popular meaning. Artificial or scientific meanings should be avoided. See Cooley on Taxation, volume 2, section 503, page 1115. The underlying principle of construction is to ascertain the legislative intent and give effect to it. As the Commonwealth is seeking to impose a tax on the property, the burden is on it to show that it clearly came within the tax statute. If there is doubt or uncertainty as to the imposition of the tax, that doubt or uncertainty should be resolved in favor of the taxable. The burden is on the Commonwealth to show, first, that the agreements contemplated the payment of income or profits as distinguished from the fixed charge that had no relation to the principal, and, second, that the actual receipt of the income at Mrs. Barber's death was what was intended to be covered by the statute by the words "take effect in enjoyment after death."

The Act of April 7, 1826, section 1, and, of May 6, 1887, P. L. 79, use much the same language as the Act of 1919, with a few exceptions not material here. These acts have been construed in a number of cases, some of which were reviewed in Todd's Est. (No. 2), 237 Pa. 466. In that case at various times after "A" made her will, she paid to the churches the amounts of such legacies, taking from them obligations or "annuity notes" by which they agreed to pay her interest on the amounts

during the term of her natural life. She had also taken such notes from the churches to which she had previously made gifts in her will. The court held that the entire amount of the gifts represented by these annuity notes was subject to collateral inheritance tax. We said, "The effect of the scheme adopted was to give the testatrix a life income, greater perhaps than she could have derived from an ordinary investment, but the full enjoyment of the principal could not be had until after her death."

Where the grantor delivers property in possession to a grantee as trustee for designated uses, but retains the profits or income from such property with a certain control over it until death, "enjoyment," as contemplated by the statute, takes effect after the grantor or donor's death, and the property which is productive of such profits or income is subject to a tax. The power of revocation to be exercised during the settlor's lifetime will not defeat an absolute transfer of corpus and income (Dolan's Est., 279 Pa. 582) ; nor will the settlor's right to substitute a new trustee, nor the retention of certain supervision of the funds in the hands of the trustee: Houston's Est., 276 Pa. 330.

The instruments created a trust for a given purpose. In addition, there was embodied in them an agreement to pay a sum of money measured by an interest rate on a given principal which was the trust fund. Interest in common acceptation is earnings, profit, income, or compensation from the use of money. When money is loaned, the earnings or income from it are usually spoken of as interest. This income from the fund in possession of the Board was not an annuity, as that term is generally understood, unless the payment of interest on money borrowed may be termed an annuity, which would be a new conception of the idea. If it were an annuity, the property or fund would become dissolved among the general properties of the Board, but the instruments specifically require that the fund should

not only be kept alive as the basis of an income, but, should be kept intact as a trust fund forever. This is manifest when considering the provisions relative to the dissolution of the Board, or of the seminary itself. The distinction between the income here provided for, and the purchase of an annuity so strongly urged by the appellant is obvious, and the agreements under which this money was transferred contemplated the payment of income or profits to the donor or grantor in the amounts specified therein.

Did the enjoyment of the income take effect at Mrs. Barber's death? The Board agreed to distribute the income or profits arising from the fund to certain specific uses or purposes. First, it was to pay Mrs. Barber, during her life, such portion of the income to which the given rate percentages would amount; second, to pay Mae Lynd, out of the income, 5% on $50,000; and third, to pay the balance of the income to the seminary, to be used for its running expenses, enlargement, and equipment. The principal was a separate and distinct fund to be preserved and administered under this direction. If the Board were to be dissolved, the income from the trust fund was to be administered by the general assembly of the church for the same general purposes, and, if the seminary were to be abandoned, then the income was to be used for the General Missions of the Board of Freedmen. Undoubtedly the donor, during her life, could compel the income from the fund to be applied in the manner specified in the agreements. The income above the percentages was to be used for the running expenses, equipment, and enlargement of the institution, but for no other purpose. When one of the buildings was destroyed by fire, the money in the trust fund could not be used to rebuild it without securing the consent of the donor, the cestui que trust, which was done. This is merely an incident illustrating the control that was retained. Of course that would not be conclusive nor sufficient if the beneficial enjoyment of the fund had not

been retained by her. While the fund was in the physical possession of the Board and was to remain intact, the beneficial enjoyment of that fund remained in the grantor and Mae Lynd, during life. The surplus, if any, was to be paid to the seminary. At their death, the entire income was to be used for the seminary. It was not until the donor's death, and, as to part of the property, until Miss Lynd's death, that the Board would have any absolute right to use all the income for the seminary. Before that time, its right was contingent on the amount of income the property brought. The Board would not have an absolute right of enjoyment until then, and the Commonwealth had the right to tax the property as it did.

The decree of the court below is affirmed at appellants cost.