Husband's Estate.

Argued September 28, 1934. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Fred B. Trescher,* with him *E. Russell Shockley,* Deputy Attorneys General, and *Wm. A. Schnader,* Attorney General, for Commonwealth.

*Carl E. Glock,* with him *George H. McWherter* and *Reed, Smith, Shaw & McClay,* for executrix and for trustee.

OPINION BY MR. JUSTICE MAXEY, November 26, 1934:

F. M. Husband, a resident of Mount Pleasant, Westmoreland County, died on March 12, 1925. His estate was appraised at $2,562.14 upon which valuation a transfer inheritance tax of $51.25 was paid. Subsequently, in 1926, a supplemental appraisement was filed including as additional property certain securities valued at $183,453.38, which were alleged to have belonged to the decedent at the time of his death, and an additional tax of $3,575.69 was assessed on October 27, 1926. Within the thirty-day period provided by statute, Minnie May Ferguson, administratrix of the decedent's estate, appealed from the supplemental appraisement and assessment of tax to the Orphans' Court, and filed a bond, in the sum of $500, conditioned upon her paying "all costs that may accrue in connection

with or by reason of said appeal, together with whatever taxes shall be fixed by the said court," which bond the court approved. Nothing further was done, however, in the appeal until the spring of 1933, when the administratrix presented a petition to the court below for a citation upon the Commonwealth to show cause why the supplemental appraisement and assessment of inheritance tax should not be set aside, on the ground that the property listed in the appraisement was not the property of the decedent at the time of his death, it having been conveyed, almost three years prior to that date, to the Union Trust Company of Pittsburgh under a trust created by the decedent's four children. An answer was filed denying the averments of the petition, and after a hearing the court below found that part of the securities in the trust estate in fact belonged to the decedent's children when the trust was created and were therefore exempt from tax, but that the balance of the trust estate was placed therein by the decedent, and that inasmuch as the trust agreement provided that the income of the trust should be paid to the decedent during his life, his creation of the trust was a transfer of his property which did not take effect until his death, and was therefore subject to tax. Accordingly the court fixed the tax due at the sum of $2,772.07 with interest thereon at the rate of one per cent a month from a year after the death of the decedent. The Commonwealth, at the same time that it filed an answer to the administratrix's petition, also moved to quash the appeal to the orphans' court, on the ground that the bond filed was insufficient, but this motion the court overruled. Both parties to the controversy have appealed; the Commonwealth contends that its motion to quash should have been sustained, and that the court erred in finding that part of the trust estate belonged to the children of the decedent, rather than to the father; on the other hand, the administratrix and the Union Trust Company as trustee contend that no part of the trust estate be-

longed to the decedent or was taxable, and that, even if this be so, the court erred in charging interest on the tax at the rate of one per cent a month. Both appeals are now before us for consideration.

The trust in question was created in April, 1922, by an instrument whereby the securities now sought to be taxed were conveyed to the Union Trust Company, in trust, to pay the income therefrom to the decedent for life, after his death to pay his widow $250 per month for life, and thereafter to divide the corpus into four equal parts, one of which was to be devoted to the use of each of his children. Until shortly before the creation of the trust, the securities which were the subject of the trust were kept in a safe deposit box in a bank at Mount Pleasant, to which the children as well as the father had access; the property at that time consisted of stock of the Pittsburgh Coal Company, registered in decedent's name, bonds of a face value of $97,000, and two promissory notes aggregating $73,000 payable to the decedent. It was testified that the bonds and notes placed in trust represented an original investment of $70,000 in 1902, in stock of the Bluefield Brewing Company. At that time the decedent gave each of his four children $5,000 worth of this stock, which was registered in their names. In 1906, this stock was exchanged for bonds, so that the $20,000 worth of stock belonging to the children was replaced by $25,000 worth of bonds and the $50,000 of stock belonging to the decedent was replaced by $62,500 of bonds, making a total of $87,500 of bonds owned by the family. For the sake of more convenient management, the children then assigned their bonds to the father, and thereafter he managed the entire fund. These bonds were the parent securities of all the others later placed in trust. Decedent also owned 300 shares of Pittsburgh Coal Company preferred stock since prior to 1902; this investment remained unaltered throughout the owner's life and the children made no claim to it. Decedent occasionally consulted his children

as to investments and paid to them income from the fund, but the management of the common fund was entirely in his hands and he used the fund in business and investments as he saw fit. It was also testified that from time to time over this period of years, the decedent expressed his intention to divide this fund equally between his four children. For several years before the trust was created, the decedent was negotiating with the Union Trust Company for the purpose of effectuating this intention by a trust, and a draft of such a trust agreement was drawn up, wherein the decedent was named as settlor, with the power of revocation. It was pointed out to the decedent by the trust company that in this form the property was subject to inheritance tax, and later, although this fact was not shown to have been the motive for the change, the trust agreement was amended so as to make it irrevocable, with the children of the decedent as donors, in which form it was approved by the decedent. About a month prior to the execution of the agreement, the decedent took the securities out of the safe deposit box in Mount Pleasant, and in the presence of one of his sons endorsed the stocks and notes in blank; the bonds were in "bearer" form and so did not require endorsement. From Mount Pleasant the securities were taken by a nephew of the decedent to Pittsburgh, and by him produced at the execution of the agreement, at which time the two sons of the decedent took them and, in their father's presence, delivered them to the trust officer of the Union Trust Company.

It is obvious that this trust was really created by the decedent; the negotiations which effectuated it were his; he was the "pilot" who "brought that ship into port." The court below correctly held that his transfer to his children, by endorsement, of the securities which he owned was not a bona fide transfer of ownership, but merely "window dressing," giving to the children the appearance of being settlors of the trust. Under the trust agreement, the decedent himself was until

his death the sole beneficiary of the trust, and therefore of the securities composing it, and it is settled by a line of decisions ever since Reish v. Com., 106 Pa. 521, and including Lines's Est., 155 Pa. 378, 26 A. 728, Todd's Est., 237 Pa. 466, 85 A. 845, and Barber's Estate, 304 Pa. 235, 155 A. 565, that in such case the real transfer in enjoyment of the property concerned does not occur until after the death of the donor or settlor. The transfer by the decedent of his securities, by placing them in this trust, was therefore taxable under the statute (Act of June 20, 1919, P. L. 521), which levies a transfer inheritance tax upon transfers of property "intended to take effect in possession or enjoyment at or after" the death of the transfer. It follows that so far as the securities subject to the trust belonged to the decedent at the time of its creation, and not to his children, the tax was properly levied. The administratrix maintains that the trust was not created for the purpose of avoiding the payment of an inheritance tax, but was intended by the father to effect an equal distribution of his property among the children during his lifetime, in order to eliminate the possibility of later family dissension. The existence of this laudable motive for his act does not alter the fact that the transfer *in enjoyment* of this property did not take effect until his death. The only fait accompli during his lifetime was not a distribution but a schedule or plan of distribution of this particular property.

The court below found, however, that part of the fund comprising the trust belonged to the children of the decedent and was placed by them in the trust, and held therefore that this portion of the trust property was not subject to tax. Such findings of fact will not be disturbed on appeal in the absence of clear error (Andrew's Est., 251 Pa. 320, 96 A. 747; Smith's Est. (No. 1), 261 Pa. 51, 104 A. 492), and in the instant case the sustaining evidence is ample. Except for the Pittsburgh Coal Company stock, the securities placed in

trust were entirely the product of the $87,500 worth
of Bluefield Brewing Company bonds held by the de-
cedent and his children in 1906. Twenty-five thousand
dollars worth of these bonds or two-sevenths of the
total belonged to the children, and when the entire prod-
uct of their reinvestment was placed in trust, a propor-
tionate share was the children's contribution. The fact
that in the interim between 1906 and the creation of the
trust sixteen years later, the father held title and pos-
session of the entire fund and managed it, does not de-
stroy the title of the children to their respective shares
of the common fund nor is the inference warranted that
the children turned their bonds over to their father as
a gift, without the retention of a beneficial interest
therein. That subsequently the decedent made remit-
tances to his children from the income of this fund
which was appropriately under his care and manage-
ment flatly negatives any such inference. The finding
of the court below that two-sevenths of the value of
the bonds and promissory notes placed in the trust fund
were not transfers by the decedent but belonged to
his children must be sustained.

The next question is whether interest shall be charged
on the tax due at the rate of 12 per cent or 6 per cent.
The Act of June 20, 1919, P. L. 521, article IV, section
38, provides for a discount of five per cent if the tax is
paid within three months after the death of the decedent
and that if the tax is not paid at the end of one year from
the death of the decedent, interest shall be charged at the
rate of 12 per cent per annum. However, the act makes
two exceptions to this 12 per cent rate as follows: (A)
where, because of claims made upon the estate, litigation
or other unavoidable cause of delay, the estate of any de-
cedent or any part thereof cannot be settled up at the end
of the year, interest at the rate of 6 per cent per annum
shall be charged upon the tax arising from the unsettled
part thereof, from the end of such year until there be de-
fault, and (B) where real or personal estate withheld by

reason of litigation or other cause of delay, in manner aforesaid, from the parties entitled thereto, subject to such tax, has not been productive to the extent of six per cent per annum, the proper parties shall not pay a greater amount as interest to the Commonwealth than they have realized or shall realize from such estate during the time the same has been or shall be withheld as aforesaid. In the court below the administratrix offered no evidence on which there could be based any finding as to the actual earnings of the trust assets during the interest period. This burden rested upon the taxpayer. The court below held that the rate of interest charged should be twelve per cent per annum, or one per cent per month. In Arnold's Est., 83 Pa. Superior Ct. 264, the question was as to the liability of the decedent for collateral inheritance tax. The fundamental question involved was, as in the case now before us, whether or not certain property which had been conveyed by deed prior to the decedent's death but which remained in his possession and of which he enjoyed beneficial possession was subject to collateral inheritance tax. At the audit of the account on July 10, 1916, $1,500 was suspended from distribution pending the determination of the question of the liability for tax. Nothing further was done either by the Commonwealth or the accountants to bring the matter up until July, 1919, when the Commonwealth filed its petition alleging that there was due the Commonwealth $1,100 with penalty as provided by law, and praying for an order directing payment thereof. An answer was filed. The matter did not come to a hearing until November 23, 1923, and was not disposed of until 1924. The Orphans' Court of Allegheny County held that the property was subject to tax, but added, "It [the State] should not be entitled to and will be denied the penalty thereon. It has not been diligent in enforcing this claim, and should not be entitled to a premium for delay, even though blame

may rest upon the other side for not pressing the matter to an issue before this time." The Superior Court did not pass upon the question whether 6 per cent or 12 per cent interest should be allowed, but decided only that the right of the Commonwealth to collect the inheritance tax was not, under the attendant circumstances, defeated by the conveyance of the land. It also decided that when the real and personal property fall to the same heirs, it is not material from which source the payment of the tax is made. No appeal was taken by the Commonwealth from the refusal of the court below to impose the 12 per cent tax.

In Com. v. Johnston, Jr., Executor, etc., 2 Penna. D. & C. 111, the Court of Common Pleas of Dauphin County, in an opinion by President Judge HARGEST, held that "where the payment [of a transfer inheritance tax] is delayed beyond that period [i. e., 12 months] for unavoidable reasons, interest is chargeable at 6% instead of 12%." The court added, "We think that where there is bona fide litigation to test the right to tax, the interest should be at the rate of 6 per centum."

In Sprankle v. Com., 2 Walker 420, it was held that where the failure to pay the collateral inheritance tax promptly is caused by an honest doubt as to liability, the penalty for nonpayment should not be exacted. See also Com. v. Ebervale Coal Co., 2 Pearson 419.

It is well settled that tax laws are to be construed most strictly against the government and most favorably to the taxpayer, and a citizen cannot be subjected to a special burden without clear warrant of law. See 61 C. J., page 1625, section 2413. It has also been held that "whenever the litigation [in respect to inheritance taxes] involves an honest and reasonable difference of opinion and is undertaken in good faith it will be so far 'necessary' as to avoid interest charge for delay in payment resulting therefrom." Here, of course, an "interest charge" is imposed by statute but the 12% interest rate is obviously in the nature of a penalty,

and not merely compensation for the delayed payment and we hold that the litigation manifestly undertaken in good faith to determine the question of liability for taxation is such litigation as is recognized by the Act of 1919 as preventing the settling up of the estate at the end of the year and as causing a delay in tax payment for which only 6% interest should be charged. In State v. Pabst, 139 Wis. 561, 121 N. W. 351, it was held that litigation to determine doubtful questions as to the liability of transferees for the inheritance tax, and delays occasioned thereby is "necessary litigation or unavoidable delay." In In re Irwin's Est., 196 Cal. 366, 237 Pac. 1074, it was held that where litigation was instituted by contestants to determine whether any tax was due on a legacy to a charity foundation, and correctness of amount of tax fixed upon another legacy, and grounds of opposition possessed sufficient merit to warrant their presentation to a court for determination of questions involved, a penalty should not be imposed for delay. In State v. Lane, 134 Ark. 71, 203 S. W. 17, it was held that proceedings by executors for purpose of ascertaining amount of inheritance tax, where not instituted for purpose of defeating payment, do not justify imposition of penalty.

The Commonwealth argues that the 12 per cent tax should be imposed in this case because the administratrix did not act with diligence in having the question of liability for taxes disposed of promptly. The Act of June 20, 1919, above cited, does not say anything about a penalty being imposed for lack of diligence. Nor does it say that to come within the exceptions to the 12% rate the taxpayer must prosecute his appeal with diligence. It says: "Where, because of......litigation......the estate of any decedent or any part thereof cannot be settled up at the end of the year, interest at the rate of six per centum per annum shall be charged ......" We hold that the facts in this case bring it within the language quoted, and therefore an interest

rate of 6 per cent and not one of 12 per cent should be charged on the delayed tax payment.

The Commonwealth, in its appeal, complains of the overruling by the court below of its motion to quash the administratrix's appeal to the orphans' court. It contends that a bond of $500, such as was given, cannot be security for a tax of over $3,500, as was assessed by the register of wills, and that therefore the administratrix had no right of appeal, inasmuch as section 13 of article II of the Act of 1919, supra, provides that "Any person not satisfied with any appraisement of the property of a resident decedent may appeal, within thirty days, to the orphans' court, on paying or giving security to pay all costs, together with whatever tax shall be fixed by the court." This contention is not well-founded. While a bond for $500 is obviously inadequate to secure the payment of costs and a tax of $3,500, the statute does not require a bond for the payment of the tax originally assessed, but for the payment of such tax as "shall be fixed by the court." The sufficiency of the bond offered was a question for the determination of the orphans' court: it approved the bond and its action in doing so is not now before us for review.

The decree of the court below, except for the 12% interest rate, is right. However, in computing the tax payable the court inadvertently failed to deduct from the gross assets of the estate the debts of the decedent and the costs of administration. This requires a corrected computation of the tax. If from the net estate of $181,347.20, as shown by the supplemental appraisement, the nontaxable portion of the trust fund is deducted, the balance subject to tax is $137,805.14, upon which the tax of two per cent is $2,756.10. Deducting from this the $51.25 already paid, the tax due is found to be $2,704.85, with interest at six per cent from March 12, 1926, i. e., from one year from the date of the decedent's death. To the extent stated the decree of the court below is modified.

The decree of the court below as thus modified is affirmed, at the cost of the respective appellant in each appeal.