Sellers's Estate.

Argued January 11, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Arthur Reeser,* with him *Harold L. Ervin,* of *Lutz, Ervin, Reeser & Fronefield,* and *V. Gilpin Robinson,* for appellants.

*John J. Stetser,* with him *Charles J. Margiotti,* Attorney General, and *E. Russell Shockley,* Deputy Attorney General, for appellee.

OPINION BY MR. JUSTICE STERN, March 22, 1937:

This appeal is from imposition of a collateral inheritance tax upon certain real and personal property conveyed by Sarah P. Sellers to appellants in 1930 in trust to pay the net income therefrom to donor during her lifetime, and at her death to retain the principal for the creation, equipment and maintenance of a free, public library as a memorial to her parents. The deed of trust stipulated that the library should be under the management of a board of twelve, six of the original appointees being named in the deed, the others to be selected by the trustees. The library was preferably to be located in the dwelling then occupied by Miss Sellers, but she was to remain in enjoyment and control of the residence as long as she lived. The net income from the trust was to be turned over to the board of managers of the library for its maintenance. Donor reserved the right to revoke or alter the trust.[1]

---

[1] By her will in 1931 she confirmed the disposition of her estate as set forth in the deed of trust.

Miss Sellers died in 1933. The property conveyed in the deed was appraised at $102,576.25, and a collateral inheritance tax levied in the sum of $10,257.63. An appeal taken by the trustees to the orphans' court was dismissed, and the present appeal followed.

The Act of June 20, 1919, P. L. 521, section 1(c), imposes a tax upon the transfer of property "by deed, grant, bargain, sale, or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death." A similar provision existed in the statutory law of the Commonwealth as early as 1826,[2] and from *Reish v. Commonwealth,* 106 Pa. 521, to *Cooper's Estate,* 320 Pa. 418, it has been uniformly held that where the donor continues as beneficiary of a trust until death, the interest of the remainderman does not take effect in enjoyment until that time and is therefore subject to the collateral inheritance tax.

Appellants, conceding this, rely for their claim of exemption upon section 27 of the Act of July 20, 1917, P. L. 1143, which provides that: "Any building which shall be owned and occupied by a free, public, nonsectarian library . . . shall be exempt from all county, city, borough, town, school, bounty, poor, or road taxes. . . . All gifts, devises, grants, or endowments made to such a library, and for such purposes, shall be free from collateral inheritance tax; . . ."[3]

The question here involved is whether the phrase "such a library," as used in the act, includes a library of the nature provided for in the deed of trust. A reading of the act as a whole—it being a codification of previous statutes dealing with various phases of the subject—indicates beyond a doubt that the only libraries within its

---

[2] Act of April 7, 1826, P. L. 227.

[3] Section 27 was repealed, so far as it relates to exemption from *local* taxation, by section 601 of the Act of May 22, 1933, P. L. 853, but such exemption was re-enacted in section 204(k) of that act.

intended scope are those established or maintained, in whole or in part, by a municipality.[4] Its concluding words are: "it being intended that this act shall furnish a complete and exclusive system in itself so far as relates to free, public, nonsectarian libraries, *supported wholly or in part by the several municipalities,* as defined in section one of this act of the Commonwealth." (Italics supplied.) Tax exemptions are to be strictly construed, and it is impossible to arrive at a conclusion that the exemption from collateral inheritance tax—almost unique in the legislation of the State—was intended by the act to apply to libraries, even though free, public and nonsectarian, if established or maintained by private individuals as distinguished from municipalities.

Appellants, in order to find refuge under the Act of 1917, are therefore compelled to fall back upon an alleged status acquired for their library by a written agreement entered into between them and the Board of Library Directors of the Free, Public, Nonsectarian Library of the Township of Upper Darby, under date of May 17, 1934. It appears that a free, public, nonsectarian library had been established in Upper Darby Township in 1930, following a vote of the qualified electors in accordance with the provisions of the act. The agreement recited that the public could be best served "by the joining and coöperation of the two bodies." It provided that decedent's former home should be "used and occupied as a Public Non-Sectarian Free Library for the use of the residents of the said Township of Upper Darby," and that the net income from the trust fund should be used for the support and maintenance of the building, which was to be under the control and management of a board of managers "subject to the

---

[4] The term "municipality" is defined in section 1 of the act as meaning "any county, city, borough, town, or township, as the case may be."

rights, powers and duties of the said Trustees under the terms of the said Trust, and of the Board of Library Directors as provided by law." The Board of Managers was to consist of not more than twelve persons "to be selected in conformity with the terms of said Trust and the requirements of the law regulating the establishment and maintenance of Free Non-Sectarian Libraries. Upon such Board the Trustees shall have representatives as is provided by said Trust, and the Board of Library Directors shall have such representatives as shall conform to the law relating to the establishment and maintenance of Free Public Non-Sectarian Libraries." There were to be periodical joint meetings of the Board of Managers and the Board of Library Directors. The agreement was subject to revocation by either of the parties upon 90 days' notice.

After this agreement was executed, the trustees spent $11,700 in remodeling the Sellers residence from a dwelling house into a library building, and the Board of Library Directors expended approximately $6,000 in equipping it for library purposes and installed several thousand volumes. It was opened to the public in October, 1935. The trustees named the members of the Board of Managers, including among them three of the members of the Board of Library Directors. The latter Board pays the salaries of the employes; the building itself is maintained, as provided in the agreement, by the net income from the trust.

Assuming, without deciding, that the trustees had the power under the deed of trust to enter into such a plan, and that the question whether the trust property was subject to collateral inheritance tax can be legally affected by an arrangement entered into by the trustees a year after decedent's death, it remains quite obvious that the agreement of May 17, 1934, did not confer upon the library the exemption otherwise denied to it. It has already been pointed out that that exemption, in conformity with the general scope of the Act of 1917, was

limited to libraries "supported wholly or in part by the several municipalities." If the present library be regarded as the one established by the municipality in 1930, it would, by sections 5 and 9 of the act, have to be under the *exclusive control* of a board of library directors appointed by the "municipal authorities,"[5] whereas the present library, so far from being under the exclusive control of such a board, is governed by a board of managers appointed by the trustees under the Sellers deed of trust. It would seem clear that a municipally owned library cannot be turned over, even by the municipal authorities themselves, to private management. Appellants contend that the library is supported *"in part"* by the municipality, and lay stress upon sections 12, 13 and 14 of the act, as amended by the Act of May 4, 1927, P. L. 724, providing that municipalities may make appropriations "to maintain or aid in the maintenance of a free library established by deed, gift, testamentary provision, or in any manner otherwise than under the provisions of sections three, four, and seven of this act: Provided, That the municipal authorities shall be represented by at least two members of the board having control of the affairs of said library"; and the municipality "may contract with the managers or owners of any existing nonsectarian library for the free use of such library by the residents of such municipality," and for that purpose may make appropriations from the public taxes. In the present case, however, as far as the record discloses, the *municipality* has not made any appropriations to aid in the maintenance of the library, nor any contract with its managers or owners. The agreement of May 17, 1934, was with the Board

---

[5] Section 2 of the act defines "municipal authorities" as "the mayor and council of any city, the burgess and council of any borough or town, the supervisors of any township, or the commissioners of any county, as the case may be." The term was extended by amendment of May 13, 1931, P. L. 127, to include "the commissioners . . . of any township."

of Library Directors, which is merely an instrumentality to manage the township's library, and appointed by the commissioners of the township for that purpose in accordance with the act of 1917. Such a board cannot, without authority from the municipality itself, divert public funds appropriated to it, to the aid of a privately established or maintained library. Moreover, section 21 of the act provides that "whenever there is in any municipality a free, public, nonsectarian library which is open to the use of all the residents thereof, no new library shall be there established under the provisions of this act, but *all public aid* hereby authorized shall be given to such existing library, . . ." (Italics supplied.) It must, therefore, be evident that, even though the money used for equipping the library building was furnished by the Board of Library Directors, and the employes are paid by that board, the library has not thereby been brought under the terms of the act as one supported either wholly or in part by the municipality.

The judgment of the court below, dismissing the appeal of the trustees from the assessment of the collateral inheritance tax upon the trust property, is affirmed, costs to be paid by appellants.