Glosser Trust.

Argued October 2, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

212

*David Fuss,* Deputy Attorney General, with him *J. Harrison Westover, George W. Keitel,* Deputy Attorned General, and *James H. Duff,* Attorney General, for appellant.

. *Morton Meyers,* with him *Graham, Yost, Meyers & Graham,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, November 8, 1946:

Were the assets of a certain trust which was created by decedent in his lifetime subject at his death to the transfer inheritance tax? The court below held that they were not so taxable, and the Commonwealth appeals.

On May 1, 1939, Saul Glosser, decedent, and his wife, Eva Glosser, executed an irrevocable declaration of trust.[1] It recited that they "are in possession of and have set aside for and on behalf and for the benefit of the beneficiaries" a fund of $125,000 to be "used and invested by the trustees for and on behalf of the beneficiaries." Glosser paid the federal gift tax on the full value of the assets and the trustees annually thereafter paid the tax on the trust income. Glosser was, at the time, only 46 years of age; he died unexpectedly five years later. It is admitted by the Commonwealth that he did not create the trust in contemplation of death.

The declaration of trust provided that in case of the death of one of the trustees the survivor should appoint

---

[1] The wife was made one of the donors for the purpose of relinquishing her dower rights.

a successor trustee to fill the vacancy, and such a successor has been appointed.

The declaration of trust stated that the beneficiaries were the three sons of the donors, Alvin, Morton and William, each of whom was to have a "one-third beneficial interest of the trust created hereby, the value of which may be diminished or increased in accordance with the terms and provisions hereof." It was provided that "The interest of each and every beneficiary . . . shall be only in the earnings, avails and proceeds arising from the sale, management, operation or other disposition of the property of the trust or any part thereof, when and as the same is distributed by said trustees in accordance with the terms of the within instrument, . . . and no beneficiary hereunder shall have any title or interest, legal or equitable, in or to said property as such, but only an interest in and to the earnings, profits, avails, and proceeds thereof as and when same are made and distributed, and no right thereto shall exist until actual, physical disposition and delivery is made by the trustees to the beneficiaries or to a beneficiary". The trust res was to be "kept intact for the purposes and uses herein provided". There was a spendthrift provision to prevent the pledge, assignment or sale by any of the beneficiaries of any principal or income payable or distributable to them, and to make the property immune against liability for their debts. The trustees were "vested with full and complete title to all of the property of the estate"; they were given power to sell, mortgage or lease the property or any part thereof and to reinvest the proceeds. They were also given authority to designate an agent to manage and operate the trust properties and for that purpose to employ such other help as they might deem necessary. They were to collect the income and pay all necessary operating and maintenance expenses. They were to be allowed reasonable compensation for their services. The trust was to "exist and remain in full force and effect for a period of fifteen (15) years from the

date hereof, however, the trust created hereunder may be terminated at any time upon the mutual and concurrent decision of the trustees and of the beneficiaries hereunder. At or upon the termination of the trust created hereunder, the trust res shall be distributed between the beneficiaries named hereunder . . ., but nothing herein contained shall be construed to limit the power and authority on the part of the beneficiaries to extend the trust created hereunder for a further period of time . . ." At the termination of the trust, if the trustees deemed it "inadvisable to sell or dispose of such property as may then remain in the trust estate," they were empowered to distribute the property to the beneficiaries in kind, their appraisal and division of the assets for that purpose to be conclusive.

No income from the trust was ever distributed to the beneficiaries. At the time of decedent's death the trust assets, including the accumulated undistributed income and the profits made on the original assets, amounted in value to $204,044.50.[2]

The Act of June 20, 1919, P. L. 521, section 1(c) provides for the imposition of the inheritance tax upon the transfer of property, "by deed, grant, bargain, sale, or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death." The sole question in the present case is whether the transfer effected by the declaration of trust was one intended to take effect in possession or enjoyment at or after Glosser's death within the meaning of the act.

That the donors made themselves the trustees is of no legal significance in regard to the problem here involved. It is, of course, always competent for a person creating a trust to become himself the trustee, and, if a trust is intended, it will be equally effectual whether

---

[2] When the trust was created, and also at the time of his death, Glosser owned assets of more than $500,000 in excess of those placed in the trust.

the donor transfers the title to a third person as trustee or declares that he himself holds the property for the purposes of the trust: *Smith's Estate,* 144 Pa. 428, 435, 436, 22 A. 916, 917; *Tunnell's Estate,* 325 Pa. 554, 559, 190 A. 906, 909.

What is the test to determine whether, for inheritance tax purposes, a transfer is to be regarded as effective immediately, or as not effective in possession or enjoyment until at or after the death of the donor? It is clear, from a long line of authorities,[3] that, even though the property has been delivered to a trustee and vested remainders given to the beneficiaries, if the donor himself continues as beneficiary until his death, as by reserving a right to the income during his life, the interest of the remaindermen does not take effect until the donor's death and is, therefore, subject to the transfer inheritance tax. But, if there is no such reservation, if the donor has not retained any power of revocation or amendment whereby he may reassert dominion over the property, if he has divested himself absolutely of all title to the property at the time of the execution of the trust instrument, the transfer is a perfected gift inter vivos and, therefore, not subject to the tax: *Commonwealth v. Linderman's Estate,* 340 Pa. 289, 291, 17 A. 2d 397, 398. The criterion is not whether the beneficiaries are to acquire actual possession or enjoyment at or after the death of the donor but whether the latter has irrevocably parted with all his interest, title, possession and enjoyment in his lifetime. From this it follows that the fact that income, which is vested in the beneficiaries,

---

[3] *Reish, Administrator, v. Commonwealth,* 106 Pa. 521; *Lines's Estate,* 155 Pa. 378, 26 A. 728; *Todd's Estate (No. 2),* 237 Pa. 466, 471, 472, 85 A. 845, 847; *Barber's Estate;* 304 Pa. 235, 241, 155 A. 565, 567; *Leffmann's Estate,* 312 Pa. 236, 167 A. 343; *Husband's Estate,* 316 Pa. 361, 365, 366, 175 A. 503, 505; *Cooper's Estate,* 320 Pa. 418, 183 A. 45; *Sellers's Estate,* 325 Pa. 377, 379, 191 A. 170, 171; *Conrad's Estate,* 341 Pa. 451, 19 A. 2d 379; *Jones Estate,* 350 Pa. 120, 124, 38 A. 2d 30, 32.

is to be accumulated and not paid to them until after the donor's death does not make the gift subject to the tax as one not intended to take effect in possession or enjoyment until after such death. It is so held in the decisions of the Supreme Court of the United States, in those of our own court, and in other jurisdictions: *Shukert v. Allen*, 273 U. S. 545; *Colorado National Bank v. Commissioner of Internal Revenue*, 305 U. S. 23; *Townsend Trust*, 349 Pa. 162, 169, 36 A. 2d 438, 441; *People v. Northern Trust Co.*, 330 Ill. 238, 248, 161 N.E. 525, 529. Indeed, as far as our own State is concerned, this, no doubt, is what was meant by Mr. Justice SIMPSON in *Spangler's Estate*, 281 Pa. 118, 121, 123, 126 A. 252, 253, 254, when, after pointing out that the title of the Act of 1919 limits the tax to property "passing from a decedent . . . at the time of his death", he stated that, in order that the statute be held constitutional, "so much of the Act of 1919 as provides that the tax is to be imposed on transfers 'intended to take effect in possession or enjoyment at or after such death,' must be held to be within the expression of the title".

It is to be noted that the right of the beneficiaries in the Glosser trust to the ultimate enjoyment of the income is absolute; it is not limited by any discretionary power on the part of the trustees. The beneficiaries became, from the very inception of the trust, the sole owners of the income even though their actual possession of it was to be delayed and meanwhile spendthrift provisions were attached to it; (cf. *Lochrie's Estate*, 340 Pa. 145, 153, 16 A. 2d 133, 137). Much is made by the Commonwealth of the statement in the trust instrument that the beneficiaries were to have no interest in the property itself but only in the income as and when distributed. But this provision, which for some purposes— as, for example, in connection with the tax problem involved in *Commonwealth v. Stewart*, 338 Pa. 9, 12 A. 2d 444—might have practical significance, here has none. In some States and by some learned jurists it has been

held that trust beneficiaries have a proprietary interest in the trust res; in other States and by other writers the view is taken that they have merely the right to enforce the trust provisions against the trustee. But, though the rights of the beneficiaries in the present trust are declared not to be in rem, the essential fact remains that the donor parted at the time of the declaration of the trust with all his right, title and interest in the property, all of which passed to the trustees without any reserved power on his part to reclaim or ever regain title, possession or enjoyment of any part thereof.

There is an additional factor in this Glosser trust which strongly militates against the Commonwealth's position. The taking of possession or enjoyment by the beneficiaries was not to be contingent upon, or in any way connected with, the death of the donor. The trust was to terminate, not at donor's death, but at the expiration of a fixed period of fifteen years, at which time the beneficiaries were to receive possession of the principal and accumulated income irrespective of whether the donor was then living or dead. His death, therefore, passed no interest in title, enjoyment or possession to any of the beneficiaries, nor enlarged or in any manner affected their rights. It is true that there is a provision that the trust could be terminated at any time upon the "mutual and concurrent decision" of the trustees and the beneficiaries, so that it would have been possible, upon such an agreement being reached, for the trust to be terminated and the assets distributed at the time of decedent's death.[4] But, this result being something to which the consent of the beneficiaries was required, the donor cannot be held to have intended it, since, in the very instrument creating the trust, he placed the implementation of any such intention wholly beyond his control: cf. *Reinecke v. Northern Trust Co.*, 278 U.S. 339, 346.

---

[4] The beneficiaries themselves were given the right to *extend* the duration of the trust.

That the trustees were to have the power to sell, mortgage or lease the assets, to reinvest the proceeds, and, in general, to manage and operate the trust properties, is immaterial so far as concerns the question of the taxability of the trust assets. Such powers are commonly conferred upon the trustee in all trust instruments. There was no retention here of any control of such a nature as to render the trust assets subject to the transfer inheritance tax: *Dolan's Estate,* 279 Pa. 582, 591, 124 A. 176, 179; *Townsend Trust,* 349 Pa. 162, 169, 36 A. 2d 438, 441; *Reinecke v. Northern Trust Co.,* 278 U. S. 339, 346, 347. That the trustees were to be entitled to compensation for their services is also a customary provision; certainly they would not have been allowed to abuse that privilege and in fact they received no compensation at all. Nor is there any justification for the view taken by the Commonwealth of the provision that each of the beneficiaries was to have a one-third interest "the value of which may be diminished or increased in accordance with the terms and provisions" of the trust instrument, or that distribution might be made in kind of "such property as may then [at the termination of the trust] remain in the trust estate". As the result of sales, re-investments, and the ordinary fluctuations in the value of securities, it was naturally contemplated that the value of the trust assets might vary from time to time and thus be greater or less at the time of distribution than when the trust was originally created; as a matter of fact that value was largely increased in that interval as is evidenced by the appraisal made by the tax authorities. These provisions cannot, by the widest stretch of judicial interpretation, be held to mean that the trustees were to be allowed to diminish the value of the interests of the beneficiaries by actually removing assets from the trust.

Whether, then, this Glosser trust be viewed in the spirit of the whole, or minutely analyzed as to each of its provisions, the conclusion is inevitable that it con-

stituted a transfer taxable as a gift inter vivos, but not taxable under the Act of 1919 as one intended to take effect in possession or enjoyment at or after the death of the donor.

Decree affirmed; costs to be paid by appellant.