IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN THE ESTATE OF GERARD BARNES LAMBERT, DECEASED.

JOHN W. DRYE, JR., J. RICHARDSON DILWORTH AND BANKERS TRUST COMPANY, EXECUTORS OF THE LAST WILL AND TESTAMENT OF GERARD BARNES LAMBERT, DECEASED, APPELLANTS, v. SIDNEY GLASER, ACTING DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, RESPONDENT.

Argued October 24 and 25, 1972—Decided July 24, 1973.

*Mr. E. Parker Hayden, Jr.* argued the cause for appellants (*Messrs. Roberts & Hayden,* attorneys; *Mr. Hayden,* of counsel).

*Mr. Herbert K. Glickman,* Deputy Attorney General, argued the cause for respondent (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Glickman,* of counsel and on the brief).

The opinion of the Court was delivered by

HALL, J. This transfer inheritance tax case involves the taxability of the proceeds of single premium life insurance policies on the life of the decedent, purchased in conjunction with a like number of non-refundable annuity contracts, as to all of which the decedent completely divested himself of income, interest and power more than three years before his death. The Division of Taxation (Division) held the proceeds taxable as a transfer "intended to take effect in possession or enjoyment at or after death" (*N. J. S. A.* 54:34–1(c)) and the Appellate Division affirmed. 118 *N. J. Super.* 121 (1972). We granted certification on the executors' petition. 60 *N. J.* 469 (1972).

The facts are not in dispute. In December 1934, the decedent, then 48 years of age, purchased 22 single premium life insurance policies on his own life. The face amount of the policies was $1,800,000 and the total premiums paid therefor amounted to $996,422.75. At the same time he purchased a like number of single premium non-refundable annuity contracts from the same insurers at a cost of $936,227.25, producing an annuity, payable to him, of $60,443.74 yearly for the remainder of his life, which represented a return of between 3% and 3½% on the total cost. It is agreed that the insurance policies would not have been issued without the conjunctive purchase of the annuity contracts.

The decedent immediately assigned all his right, title and interest in the insurance policies to the trustees of an

irrevocable *inter vivos* trust to collect the proceeds and all increments and income thereon at his death and to distribute the same among his children and their issue in accordance with the trust provisions. He retained no reversionary interest.

The annuity payments were made to the decedent until, commencing in 1941, he executed various absolute and irrevocable assignments thereof to charitable organizations. By May 1952, all the annuities had been so assigned and he retained no interest whatever in the contracts. He died in 1967, following which the insurance companies paid to the trustees the face amount of the policies, plus accumulated dividends and paid-up additions, the whole totalling $2,021,956.56. It is this sum which the Division found taxable.

There is no doubt that if the decedent had continued to receive the annuity payments until his death, the life insurance proceeds would have been taxable, as this court held in *Tilney v. Kingsley*, 43 N. J. 289 (1964), where that was the case. The thesis was that the insurance policies were tied to the annuity contracts, so that there was not the usual risk to a life insurer, but rather, as here, simply an integrated investment transaction with the face amount of the policies representing the corpus and the annuity payments the income. The policy proceeds therefore did not come within the statutory exemption of life insurance proceeds, N. J. S. A. 54:34–4, and their payment to the policy beneficiaries upon death, since the decedent had retained the annuity benefits for his life, constituted a taxable transfer intended to take effect in possession or enjoyment at death.

Neither *Tilney* nor any other case to date involved the question presented here, which arises by reason of the decedent's divestment of all interest in or personal benefit from the life insurance-annuity transaction at least 15 years before his death and of the passage of L. 1955, c. 135, N. J. S. A. 54:34–1.1 thereafter. No case has considered this

statute and references to the scope of the "at or after death" provision in *Tilney* (43 *N. J.* at 296) and *In re Lichtenstein,* 52 *N. J.* 553, 578 (1968), must be read with this in mind.

The 1955 statute provides as follows:

A transfer of property by deed, grant, bargain, sale, or gift wherein the transferor is entitled to some income, right, interest or power, either expressly or by operation of law, shall not be deemed a transfer intended to take effect at or after transferor's death if the transferor, more than 3 years prior to death, shall have executed an irrevocable and complete disposition of all reserved income, rights, interests and powers in and over the property transferred.

The statement annexed to the bill reads:

This bill is designed to cure a discrepancy between the New Jersey Transfer Inheritance Tax Law and the Federal Estate Tax Law and the Estate Tax Laws of many of our sister states; notably New York and Pennsylvania. New Jersey now taxes trusts merely because the death of a grantor causes a shift in beneficial interest from one person to another. The tax is asserted even though the grantor has retained no beneficial interest in, and no power over, the property. Such trusts are exempt under Federal and New York statutes and under the Pennsylvania Statute as construed by the cases. The proposed act eliminates this unfairness to residents of New Jersey in comparison to residents of neighboring states.

The proposed bill does not affect the present rules of taxation of gifts "in contemplation of death."

Both the Division of Taxation and the Appellate Division declined to apply the statute to this case, despite the fact that its language plainly appears to fit.

The question before us is the intent and scope of this 1955 act. At oral argument we requested counsel to make an intensive investigation of all possible sources of information on the subject. This resulted in the discovery of several memoranda between the offices of the Governor, the Attorney General, the Division and the State Treasurer, which disclosed that the statute had originally been proposed to the Division by a New York attorney representing New Jersey residents. We then sought the further views of counsel, as well as information concerning the administra-

tive practices of the Division in applying the act. This brought about contact with and additional information from the New York attorney and supplemental memoranda from counsel. This whole process consumed a considerable period of time, but has revealed a clear picture of the purpose of the 1955 statute. We have considered all of this supplementary material in reaching our conclusion. *Cf. Data Access Systems, Inc. v. State of New Jersey, Bureau of Securities*, 63 *N. J.* 158, 165–167 (1973).

Some earlier judicial and federal legislative history forms the background. In *In re Brockett*, 111 *N. J. Eq.* 183, 186–190 (Prerog. 1932), Vice Ordinary Buchanan, as a trial judge, expressed the view, although not applicable to the facts of that case, that a complete lifetime transfer of property to A for the life of the transferor, with remainder at the latter's death to B, should not be taxable at the transferor's death as a transfer intended to take effect at that event. His rationale was that the "at or after death" provision was intended to tax transfers in lieu of testamentary dispositions and that, while the hypothetical situation was in form to take effect at the death of the transferor, in practical effect and substance there was a complete, present gift during lifetime of the entire estate whereby the donor was immediately divested of all interest and enjoyment therein and hence not a transfer in lieu of testamentary disposition. He felt there was no legal difference between such a transfer and an outright and complete gift of property to one person during lifetime, which has always been non-taxable if not made in contemplation of death.

Shortly thereafter the Vice Ordinary applied this rationale to find non-taxability in an analogous situation in *Koch v. McCutcheon*, 111 *N. J. Eq.* 324 (Prerog. 1932). The old Supreme Court, however, reversed, 111 *N. J. L.* 154 (Sup. Ct. 1933), holding that, even though the transferor retained no interest at the time of the gift, there was an estate passing at his death and that such was the test of

taxability within both the letter and spirit of the "at or after death" provision of the inheritance tax law.

*Koch* was followed in *In re Hollander,* 123 *N. J. Eq.* 52 (Prerog. 1938), and in *Hartford v. Martin,* 122 *N. J. L.* 283 (E. & A. 1939), affirming 120 *N. J. L.* 564 (Sup. Ct. 1938), affirming 122 *N. J. Eq.* 489 (Prerog. 1937). The decision of the then highest court in *Hartford* settled the law in this state in favor of taxability of the corpus under the "at or after death" provision where the transferor's death was still a determinative factor in the devolution and possession of the estates granted, *i. e.* that event caused a shifting of the economic benefits and burdens of property, even though the transferor had no interest whatever therein at the time of death. (It may be noted that in *Koch* and *Hollander* the transferor had retained no interest in or power over the property transferred from the inception of the transfer — a "one-step" transaction —, whereas in *Hartford* the transferor originally retained the income for life but assigned all his interest prior to his death — a "two-step" transaction as in the case at bar.) Our law thus remained until the passage of the 1955 act.

Turning to the federal side, with which the 1955 act was intended to generally harmonize according to the statement annexed to the bill, we find that, at the inception of the federal estate tax in 1916, like the original New Jersey statute, *inter vivos* transfers "intended to take effect in possession or enjoyment at or after [the transferor's] death" had been expressly includible in a decedent's gross estate. Revenue Act of 1916, Sec. 202(b). Between then and 1949 taxability of one-step and two-step transfers of the type involved here was somewhat unsettled by reason of various decisions of the United States Supreme Court and some Congressional action, which need not be detailed. In 1949 Congress passed the Technical Changes Act of that year (Act Oct. 25, 1949, c. 720, 63 Stat. 891), amending the then Internal Revenue Code. Sections 7 and 8 thereof dealt with

the "at or after death" situation. 26 *U. S. C. A.*, Internal Revenue Acts Beginning 1946, Cumulative Supplement, pp. 69–71. Summarily speaking, section 7 provided for inclusion in the gross estate of transfers where the decedent retained for his life an income interest or the right to designate beneficaries, but otherwise expressly excluded (as to transfers prior to October 8, 1949) transfers intended to take effect at the decedent's death unless he had retained a reversionary interest in the property, the value of which immediately before death exceeded 5% of the value of the property. (Different requirements were specified as to transfer after October 7, 1949, with which we need not be concerned.) Section 8 permitted transferors of property prior to June 7, 1932, where the right to income or to designate beneficiaries had been retained, to assign and relinquish such rights, tax free, for a certain period of time, in order to take advantage of the exclusionary provisions of section 7 referred to above.

Finally, the Internal Revenue .Code of 1954 made some slight changes from the 1949 act and has since represented the federal estate tax law on the subject. Thereby, generally speaking, *inter vivos* transfers not in contemplation of death are includible in the gross estate in only two situtations (neither applicable here) :

First, when the decedent, for his life or for a period ascertainable by reference to it, retained (1) possession or enjoyment of, or the right to income from, the property, *or* (2) the right, alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom (26 *U. S. C. A.*, § 2036(a)), *or*

Second, if (1) possession or enjoyment of the property can be obtained only by surviving the decedent *and* (2) the decedent has retained a reversionary interest in the property exceeding, at death, more than 5% of the value of the same. (26 *U. S. C. A.*, § 2037(a)).

(We are advised that, as a result thereof, the proceeds of the life insurance policies in the instant case were found non-taxable by the federal authorities.)

The New York estate tax law, also referred to in the statement annexed to the bill which became our 1955 act, conformed to the federal law changes of 1949 and 1954 by statutory amendments in 1950 and 1955, in line with that state's policy to parallel its law with that of the federal government. Pennsylvania had earlier decided by case law that the criteria of taxability under the "at or after death" provision was "not whether the beneficiaries are to acquire possession or enjoyment at or after the death of the donor but whether the latter has irrevocably parted with all his interest, title, possession, and enjoyment in his lifetime." *In re Glosser's Estate,* 355 *Pa.* 210, 49 *A. 2d* 401, 404 (1946).

It is clear, as earlier indicated, that the impetus for our 1955 act came from a New York attorney representing a wealthy New Jersey family. Members of this family had created, before June of 1932, five *inter vivos* trusts, in four of which the grantor retained an income or other interest. In the fifth the grantor retained no interest of any kind, but upon his death, the income was payable to a person other than the one entitled to receive it during the grantor's life (a one-step transfer). Prior to 1954, the grantors of the first four trusts assigned their retained interests, three to charities and the fourth to a person not entitled to the remainder interest (two-step transfers). All of this made these transfers not subject to federal estate tax in view of the 1949 and 1954 Congressional action outlined above. The attorney, on behalf of his clients, sought the Division's support of legislation which would conform our inheritance tax law to the federal law (and the New York and Pennsylvania law as well) in this respect, *i. e.* there would not be a taxable *inter vivos* transfer under the "at or after death" provision when the transferor retained no interest in the property at the time of his death. The effect would be to change the rules laid down in the *Koch, Hollander* and *Hartford* cases. Stressed was the argument not only that the rule of these cases had become unfair to New Jersey residents, but also that this state would be likely to lose some

of its wealthy residents if such transfers continued to be taxable here but not in neighboring states or under the federal estate tax law, as a result of which the state would ultimately suffer a large net loss in inheritance tax revenues. It was also pointed out that transfers where the transferor retained no interest or power at death were relatively rare in comparison with those in which some income or other interest or power was retained during life.

The Division originally opposed the proposal but, after further consideration over a considerable period of time, changed its position. The then Director of the Division, a very able and knowledgeable man in the field, finally concluded that, "[h]aving regard for existing inequities and the fact that in all probability there will be no adverse effect on revenue, but rather that the State in the long run will gain substantial revenue," the measure should not be opposed. Its form was agreed upon, it was approved and recommended by the State Treasurer and the Attorney General and it became L. 1955, c. 135.[1]

In the light of this clear history, it is indeed difficult for us to comprehend the position now taken by the Division that the 1955 act shall not be applicable in the instant circumstances. If its views were to be followed, we fail to see how the act could apply in any situation and it would

---

[1]The statute does not bring our transfer inheritance tax law into complete conformity with the federal estate tax law as far as the composition of the gross estate is concerned. The federal law includes, for example, life insurance payable to designated beneficiaries and estates held by the entirety, which are not included under our state law. Moreover, the federal law excludes transfers in which the transferor retained a reversionary interest not in excess of 5% of the value of the property. The 1955 act allows no such exception; the retention of any realistic reversionary interest by the transferor would make the corpus taxable under the "at or after death" provision. See In re Lichtenstein, supra, 52 N. J. at 575–585. In addition, transfers of the type involved in this case would nonetheless be subject to the federal gift tax, no counterpart of which exists in New Jersey law.

be nullified in practical effect. As far as the scope and intent of the act is concerned, it makes no difference that the federal estate tax is a levy on the privilege of transferring property at death while our transfer inheritance tax levy is on the privilege of succeeding to property at death. The act deals with non-includibility of a certain kind of transfer to harmonize with federal law, its language and the accompanying statement are plain as to its purpose and the theory of the tax is immaterial. Nor is it of any possible significance that the subject matter in this case is an integrated investment transaction in trust consisting of life insurance policies (corpus) and annuities (income) rather than stocks and bonds. And it is no argument to limit the generality of the act that its passage was originally sought to benefit one family. Many general laws have had such individualistic origins.

■ The Division concedes that it has heretofore taken no uniform position in the practical administration of the 1955 act. Whether it was applied or whether it was disregarded in favor of the old *Koch-Hollander-Hartford* rule has depended upon the particular examiner handling the particular estate. (The grantor of one of the two-step trusts which concerned the New York attorney who proposed the legislation died in 1961; the Division found the corpus to be nontaxable by reason of the act.) The Division may not, under the guise of administrative interpretation, adopt a view which conflicts with the statute it is charged with administering. *Cf. Rosenthal v. Kingsley*, 97 *N. J. Super.* 286, 288 (App. Div. 1967).

We should add that, while the statute expressly mentions only a two-step transaction, *i. e.* when the transferor at inception retained some interest and thereafter during his life completely and irrevocably disposed of it, we are convinced it must be deemed to apply as well when the transferor retained no interest at inception and his death merely caused a shift in beneficial interest from one person to another (a one-step transaction). This is clearly borne out by the state-

ment annexed to the bill. To limit the act's effect to a two-step transaction would be so irrational as to be beyond the conceivable legislative intent as well as such an invidious classification as to undermine its validity.

We therefore hold that, by reason of the 1955 act, transfers, as to which either the transferor retained no interest at inception or, if he did, completely and irrevocably disposed of the same more than three years before death, are not subject to transfer inheritance tax as a transfer "intended to take effect in possession or enjoyment at or after" the death of the transferor.

The judgment of the Appellate Division is reversed and the matter is remanded to the Division of Taxation for recalculation of the transfer inheritance tax accordingly.

CONFORD, P. J. A. D., Temporarily Assigned (concurring).

I agree with the result arrived at by the court and concur in the entirety of the opinion except the *dictum* at the end to the effect that the 1955 act is operative even where the transferor has retained no interest in the property whatever at the time of the initial transfer. That view is so contrary to the unmistakably clear expression of the law-makers in the 1955 legislation as to amount to naked judicial legislation. The *dictum* of the majority would operate to exempt from taxation a very substantial category of *inter vivos* transfers which the Legislature has not seen fit to exempt notwithstanding the unbroken sway since 1937 of the rule of taxability thereof pronounced by the Court of Errors and Appeals in the *Hartford* case cited by the majority. See *In re Estate of Anne Boyd Lichtenstein,* 52 *N. J.* 553, 577–578 (1968). A decision to curtail the State's revenues to the significant extent of the *dictum* herein should be left to legislative determination. *L.* 1955, *c.* 135 certainly evinces no such intent.

I would not in this case be concerned with the matter of constitutional validity of the classification between "one-step" and "two-step" transfers which troubles the court, the

issue not having been raised by any party. Like all legislation, the 1955 act is presumptively valid. It is complained of by no one; it clearly proscribes the tax imposed by the Division in this case, and it requires the reversal of the assessment adjudged by the court.

CONFORD, P. J. A. D., Temporarily Assigned, concurs in result.

*For reversal*—Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN and Judges CONFORD and SULLIVAN —6.

*For affirmance*—None.