# Cooper's Estate.   Cooper's Appeal.

*Will—Agreement of widow—Release of interest in residue.*

Testator directed that the sum of $7,000 per annum should be paid to his widow during life. Certain gifts to charities failed on account of the improper execution of the will, and a partial intestacy resulted. The widow entered into an agreement with the executors by which in consideration of the transfer to her of certain furniture she released her right to any part of the estate except that to which she was entitled under the will. It was further provided that if the income of the residue of the estate should be insufficient to pay the annuity to the widow, the annuity should abate accordingly, but that the sums so abated " should be refunded to said accountant when the net annual income beyond the required payments is adequate for that purpose." It was provided by a later agreement that interest on the appraised value of the furniture should be charged against the widow, if the income proved insufficient to pay all annuities. *Held,* that after the death of the widow, the representatives were entitled to recover the retained annuity, the income being sufficient to pay it.

Argued Jan. 22, 1892. Appeal, No. 20, July T., 1891, by Redman Cooper, from decree of O. C. Phila. Co., July T., 1879, No. 64, dismissing exceptions to adjudication of estate of Lewis Cooper, deceased.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Adjudication of the account of the Pennsylvania Company for Insurance on Lives and Granting Annuities, trustees under the will of Lewis Cooper, deceased.

The facts appear by the opinion of the court below.

PENROSE, J., filed the following opinion:

" It cannot be doubted that under the will of the testator his widow was entitled to receive $7,000, without any deduction or diminution whatever, during each year that she survived him, and that this right was not in any manner dependent upon the amount of income yielded by the estate. It follows that so far as the annual sums so given were not paid to her, she or her representatives have the right to insist that the deficiency shall be made up before any further distribution takes place, unless by her own act or agreement she has precluded herself from doing so. Has she done this?

" The will gave the residue of the estate to the executors in trust to pay to her $7,000 per annum, and $600 per annum to each of the five sisters of the testator; and after the death of all of them, and after the payment of legacies, amounting to $10,000, to children of some of the sisters, to hold the residue for certain charities. The gift for charities failed because of the non-execution of the will in accordance with the requirements of the statute; and the personal estate having passed, therefore, under the intestate laws—subject to the annuities, etc.—one half to the widow (the testator having left no issue) and one half to the brothers and sisters, an agreement was entered into, September 19, 1874, between the widow, of the first part, the executors, of the second part, and the brothers and sisters of the third part, which provided that as between her and the brothers and sisters she should release and extinguish all right to any part of the estate ' except that to which she is expressly entitled by the provisions of her husband's will,' in consideration of their agreement that there should be a present transfer to her of the household furniture, etc., appraised at $11,135.50, with like effect as ' if they had been specifically bequeathed to her by the said decedent's will.'

" The residuary personal estate amounted to $161,132.93, of which her share, after payment of the legacies ($12,000) to the sisters' children and subject to the life estate, was $74,998.76; all of which she thus gave up—but expressly reserving her rights under the will—for a consideration not moving from the parties to whom she gave it, but consisting merely of its being advanced to her, out of her own share, ' as if it had been specifically bequeathed.'

" At the same time it was agreed as between the widow and the executors, 'the parties of the second part,' and manifestly only for the protection of the latter, 'that if by reason of the reduction of the trust estate by the transfer to her of the property . . . . the appraised value of which is $11,135.50—the net annual income of the residue is made insufficient to pay in full her annuity under the said will then such annuity shall abate accordingly—such annual abatement not to exceed the lawful interest on said appraised value, and to cease when the net annual income is sufficient to pay all the annuities in full: the sums so abated to be refunded to said annuitant when the net annual income beyond the required payments is adequate for that purpose.'

" A year later, the executors having prepared their account for filing, a further agreement was entered into confirming the account, making distribution of the income then on hand, and providing as to principal as follows :

" ' The balance of principal as above set forth is to be held by . . . . the trustees of the residuary estate under the will of Lewis Cooper in trust to pay out of the income now in hand to Mrs. Emmeline Cooper, widow, in quarterly instalments, less a commission of five per cent for collecting, her annuity of $7,000 per annum, or $6,650 net—the annuity having been paid in full to June 18, 1875. Provided that if the income of the said residuary estate shall prove insufficient to meet all the annuities directed by the residuary clause of the will, in accordance with the provisions of the above recited agreement of September 19, 1874, interest at the rate of six per cent upon the said sum of $11,135.50 shall be charged against said Emmeline to such extent as shall be necessary to make good said annuities as an income asset of the estate received and paid over to her on account. And in further trust out of the income remaining after the aforesaid payment and said credit to pay the other annuities as directed by said will, less commissions and collateral inheritance tax, so far as may be possible, and to hold the said estate after such payments in trust for the uses and purposes of the will of said testator so far as the same may be legal and valid, and for the persons entitled thereto under the law and previous agreement of the parties hereto.'

" Upon the exhibition of this agreement to the court the ac-

count was confirmed, and after the distribution of the income then in the hands of the accountants the principal was awarded to the trustees to be held in accordance with it.

"If these agreements were obscure they would not, under the facts which have been stated, be construed unfavorably to the widow, who gave up so much for what was manifestly an extremely disproportionate consideration; but they are not obscure, and there is no occasion or room for interpretation. The brother and sisters, in consideration of receiving from her all that she was entitled to under the intestate laws beyond the $11,135.50 (about one seventh of what would otherwise have been wholly taken away from them), covenanted that she should have that amount 'as if it had been specifically bequeathed to her by the testator.' This, of course, would be without any impairment of her rights under the actual provisions of the will; but to guard against any possible misconstruction, these rights were expressly reserved. As against the brothers and sisters, therefore, she may unquestionably insist upon payment in full of the $7,000 per annum (and clearly without deduction of interest on what they thus agreed should be regarded as a legacy) so long as she lived. To guard still further against the possibility of misconstruction or misunderstanding upon this point, the agreement of September, 1874, provided that while as between her and the executors interest should be charged against her in the years when the income was otherwise insufficient to pay all the annuities in full, the amount so charged 'should be refunded when the annual net income beyond the required payments is adequate for that purpose.' There is no limit as to the time when this refunding shall take place. 'When' is the equivalent of 'whenever,' and is so used in the agreement. The charge against her of the interest creates, under the agreement of the parties, a debt, payable when there are funds applicable for the purpose before the time for final distribution; and there is no principle of law, and certainly nothing in the spirit, in the letter, or in the purpose of the agreements, which limits the right of recovery to the lifetime of the creditor. It is unnecessary to say that the statute of limitations cannot begin to run until the ability to pay arises. There was no consideration for a surrender of her rights as between herself and the brother

and sisters, except to the extent provided in the original agreement; and the language of the subsequent one is not to be carried beyond the purpose for which it was intended.   It does not profess to make any change : on the contrary, it declares in solemn and explicit terms that the estate shall 'be held' after payments have been made in accordance with it, 'in trust for the uses and purposes of the will . . . . so far as the same may be legal and valid, and for the persons entitled thereto under the law and the previous agreement of the parties.'   The will was legal and valid so far as it provided for the annual payment to the widow of the precise sum of $7,000; and the previous agreement provided that abatements from that amount should be refunded when the income became sufficient for that purpose.   That time has now come; and the parties who are to receive the benefit of the surrender of her rights under the intestate laws cannot be permitted to repudiate the conditions under which they acquired it.   The estate must be 'held,' in accordance with the agreements until all the obligations have been fully discharged : Wilen's Appeal, 9 Outerb. 121.

" The exceptions on behalf of the executor of the widow are sustained; all other exceptions are dismissed."

*Errors assigned* were the dismissal of exceptions to the adjudication.

*B. F. Fisher, Charles Carver* with him, for appellant.—A widow not excepting to the distribution to her of a life estate only, her heirs are precluded after death from alleging that she had more than a life estate in the fund : Manver's Estate, 1 Northum. 197.

A bequest of a sum to be paid to the legatee annually out of the rents from a certain lease if they fail not, will not authorize the reservation of the surplus of one year to pay the deficiency of the following year : Shupp v. Gaylord, 103 Pa. 319; Danforth's Appeal, 121 Pa. 359; Sell's Est., 4 W. N. C. 14.

*John G. Johnson,* for appellee.

PER CURIAM, February 1, 1892.

The opinion of the learned judge of the orphans' court is so clear and satisfactory that we affirm this decree for the reasons given by him, and dismiss the appeal at the costs of the appellant.