## Lochrie's Estate.

Argued October 2, 1940.   Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Walter Arnold,* with him *James O. Courtney, Ernest O. Kooser* and *Virgil Nobles,* for appellant in No. 124 and for appellees in Nos. 104, 105 and 145.

*Charles H. Ealy,* of *Uhl, Ealy & Uhl,* with him *Leland W. Walker, Budd B. Boose, C. N. McCune* and *Shaver & Heckman,* for appellants in Nos. 145 and 165 and for appellees in Nos. 124, 145, 165 and 168.

*William N. Trinkle,* with him *Frank F. Truscott,* of *Truscott, Trinkle & Wright,* and *Frank S. Lucente,* for appellants in Nos. 104, 105 and 168 and for appellees in Nos. 145 and 165.

*Clarence L. Shaver,* with him *Daryle R. Heckman,* of *Shaver & Heckman, Stephen C. Huestis* and *Mitchell, Taylor, Capron & Marsh,* for appellee, trustee, Nos. 104, 105, 145, 165 and 168.

OPINION BY MR. JUSTICE LINN, October 28, 1940:

John Lochrie died September 20, 1937, domiciled in Somerset County, Pennsylvania, leaving a will dated

May 17, 1933, and a codicil dated November 7, 1935, admitted to probate. His executors filed a partial account. An auditor was appointed to pass on claims of creditors and to make distribution; exceptions to his report were disposed of by a decree challenged by appeals No. 165 and No. 168.

Decedent left surviving a widow, eleven children and issue of two deceased children. One of his surviving children, Neil Lochrie, was addicted to drink, a fact which induced testator to make testamentary provisions for Neil different from those made for his other children; it is these provisions for Neil, contained in Articles V and XV, which are here for construction. Neil died July 27, 1938, intestate, without issue and leaving a widow, Irma S. Lochrie. At the time of Neil's death, his father's executors had not filed any account.

Testator had in mind a definite plan for disposing of his property; he dealt with it as if set apart in three divisions: the first, to be given specifically; the second, to be given in trust for the respective lives of the beneficiaries with remainders over; the third, to pass under the residuary clause. It is unnecessary to refer to the gifts of the property in the first division; the questions arise under the disposition of the second and third. Counting his wife, his eleven children and the issue of two deceased children, he had fourteen parties whom he desired to benefit equally.

In 1922, years before he made his will, he had established separate trust funds for his wife and eleven children. With those trusts in existence when he made his will, he decided to provide for an addition to each of the twelve existing trust funds and to establish two testamentary trusts for the issue of his two deceased sons. He did this by directing his executors, in Articles IV to X, to buy $350,000 government bonds and to transfer to the trustees of each of the existing trusts one-fourteenth of the bonds, to be held on the same terms as originally specified in the deeds of trust, except in

the case of the trust for Neil—an exception to be discussed later. He also directed the transfer of two-fourteenths to a designated trustee for the issue of the two deceased sons on terms stated in the will. The third division of his property he gave absolutely in the residuary clause, Article XV, by providing that each of the fourteen beneficiaries should receive a fourteenth share, but again allowing Neil to share only in exceptional circumstances.

The contentions now made by the parties grow out of the nature and form of the provisions in Articles V and XV for the Neil share. Neil was about twelve years old in 1922 when the inter vivos trusts were established. The settlor then delivered $25,000 in bonds to the National City Bank in trust to pay the income semiannually to Neil for life with power in him to bequeath one-third of the principal to his wife; the trustee was directed to transfer the remainder of the corpus (or the whole, if he left no widow) to Neil's lineal descendants and, if none, to transfer the principal to his brothers and sisters and their descendants per stirpes. While Neil had power to bequeath one-third of the principal to his wife, his only interest was to receive income for life. The trust deed for Neil, the only one printed in the record, must be considered in construing the will.[1]

In Article V, he ordered his executors to deliver five of these funds ($125,000 par) to the National City Bank as trustee, specifying in each of paragraphs (a), (b), (c) and (d), that $25,000 be held "to and for the benefit of" each of four named children. The Article then continues: "(e) Twenty-five Thousand Dollars ($25,000) par value of said Bonds to and for the benefit of my wife Kathleen Lochrie, who may if, as and when she elects so to do authorize and direct the said Trustee to transfer the said trust fund of $25,000 Bonds from her name to that of my son Neil Lochrie: the said $125,000

---

[1] *Clark v. Dennison*, 283 Pa. 285, 129 A. 94.

par value of Bonds as above given in trust to said National City Bank to be held in trust by it for the five beneficiaries specified in subdivisions (a), (b), (c), (d) and (e) of this Article, under the terms and conditions set forth in an existing trust heretofore created by me in which the said National City Bank is Trustee and in which the beneficiaries are Kathleen Booz, Agnes Nevling, Robert B. Lochrie, Mary Jane Lochrie and Neil Lochrie; it being my desire that the said $125,000 par value of said Bonds shall be added to and become part of said prior trust now administered by said National City Bank, the terms and conditions of which being changed only as respects my son Neil Lochrie; . . ." He provided in Article X that if the funds described in Articles IV, V and VI, for any reason, cannot be added to and made part of the existing trusts, his executors shall "secure from each of the said Trustees a proper Declaration of Trust for the due performance of the Trusts herein created, in substantially the form and substance of the existing Trusts."

In endeavoring to ascertain what the testator meant, one of the circumstances to be considered in dealing with the Neil shares, both under Article V and under Article XV, to be mentioned presently, is that Neil had become addicted to drink and that testator obviously desired to protect him against the consequences of his drinking habits.[2] What, then, in the circumstances described, is meant by the provision in Article V quoted above? Testator's widow did not "direct the said Trustee to transfer the said trust fund . . . from her name to that of" Neil, and, not having so elected, now claims that, as Neil is dead, she is entitled to the bonds absolutely. The National City Bank, trustee, claims that it is entitled to receive them to be disposed of on terms similar to those stated in the 1922 trust for Neil as modi-

---

[2] Compare *Stambaugh's Estate,* 135 Pa. 585, 597, 19 A. 1058; *Schuldt v. Reading Trust Co.,* 270 Pa. 360, 365, 113 A. 545.

fied by Article V, clause (e). Children of the decedent contend that the bequest is too uncertain to be carried out and falls into the residue: section 15 (c) of the Wills Act of June 7, 1917, P. L. 403, 20 PS section 253.[3]

The auditor held that the bequest fell into the residue. The learned court below disagreed with him and held that, as Neil was entitled to income only for his life, testator's widow could receive no more and, as Neil's right to income died with him, the $25,000 in bonds should be purchased and delivered to the trustee for distribution under the deed of trust of 1922—that is, to Neil's brothers and sisters and issue of deceased brothers and sisters per stirpes.

We have, then, the three constructions: first, the widow's claim to take absolutely; second, the children's claim that the property passes under the residuary Article XV; and third, the learned court's award to the trustee.

This provision, disposing of this one-fourteenth of the $350,000 of bonds, must be read, not only in the light of the general testamentary plan, but in connection with the rest of the paragraph providing for the administration of the fund under the terms of the trust of 1922, "changed only as respects my son Neil Lochrie." The question then is: What change would have been re-

---

[3] "(c) Unless a contrary intention shall appear by the will, such real or personal estate, or interests therein, as shall be comprised or intended to be comprised in any devise or bequest in such will contained, which shall fail or be void by reason of the death of the devisee or legatee in the lifetime of the testator, or by reason of such devise or bequest being contrary to law, or otherwise incapable of taking effect, or which shall be revoked by the testator, shall be included in the residuary devise or bequest, if any contained in such will. In any case where such devise or bequest which shall fail or be void, or shall be revoked as aforesaid, shall be contained in the residuary clause of such will, it shall pass to and be divided among the other residuary devisees or legatees, if any there be, in proportion to their respective interests in such residue."

quired in the 1922 trust deed, if Neil had lived, or if distribution had been made before he died, to permit the trustee to hold this share in trust for testator's widow with remainder as provided in the trust deed because Article X provided that the terms must be "in substantially the form and substance of the existing Trusts"? If the intention had been, as the widow contends, to give the bonds to her absolutely, it would have been unnecessary to authorize her to transfer them in trust for Neil; the power to transfer would have been an incident of her ownership. All of testator's words must be considered in ascertaining his meaning and, as he conferred the authority, he must have intended to grant something which she would not have had without the grant of authority; he must have intended to give her something less than absolute ownership, because, otherwise there would have been nothing for the remaindermen. If she had died before electing to transfer the funds and before Neil's death, her discretionary authority, in view of its peculiarly personal nature, would have died with her; in such event, if the contention now made on her behalf were accepted, her estate would have received the fund and Neil and the other beneficiaries under the 1922 trust would have been disappointed. A reading of the whole will shows that testator did not intend such inequality in distribution; it is clear that in disposing of what we have called the second division of his property he intended the beneficiaries designated to share equally. The provisions for Neil's brothers and sisters in the Neil trust deed would be rendered nugatory if the corpus were awarded to testator's widow, and such an award would disturb the whole testamentary plan by giving her two shares of the $350,000 fund, instead of one, because in Article IV, he had already provided that she should have the benefit of one-fourteenth of the fund by the addition of $25,000 of bonds to the trust fund held by another trustee for her benefit. As Article X provided

that if necessary "for the due performance of the Trusts herein created," the executors should obtain a trust deed "in substantially the form and substance of the existing Trusts," there can be no objection whatever to the construction reached by the learned court below that testator intended by what he said that until the widow acted the bonds should be held in trust to pay the income to the widow for the life of Neil, and allowing the remaining terms of the deed of trust to stand; the duration of the trust and the remaindermen would be the same; Neil would have the same power of disposing of one-third as recited above, and, in default of will or issue, the corpus would go to his brothers and sisters and children of deceased brothers and sisters. The widow's claim to take absolutely and the children's claim that the share passes under the residuary clause must therefore be rejected.

But it does not follow, from what has been said, that the part of the decree awarding this share of the bonds to the trustee can be sustained. The bonds have not yet been purchased by the executors. Neil died intestate without lineal descendants; if the bonds had been delivered in Neil's lifetime, Neil's death would require the trustee to turn them over to the remaindermen. Now that Neil is dead, if the bonds were delivered to the trustee, its only duty would be to ". . . pay over the principal thereof to the brothers and sisters of the said Neil Malcolm Lochrie, and lineal descendants of any deceased brother or sister, in equal shares, per stirpes and not per capita." In the circumstances now existing there is no reason to separate the legal and equitable titles; no active duties remain to be performed by the trustee; it would be a passive or dry trust.[4] The purposes for which the testator desired the trust no

---

[4] Compare *McCune v. Baker,* 155 Pa. 503, 26 A. 658; *Reilly's Estate,* 190 Pa. 509, 42 A. 889; *West's Estate,* 214 Pa. 35, 38, 63 A. 407; *Stafford's Estate,* 258 Pa. 595, 102 A. 222; *Buch's Estate,* 278 Pa. 185, 122 A. 239.

longer exist. The Orphans' Court applies equitable principles. It would be inequitable, in the circumstances, to subject the trust fund to the unnecessary expense incident to delivering the fund to the beneficiaries through the trustee when the court can supervise the distribution by the executor. The decree of distribution will be modified accordingly; in other respects, it is affirmed.

We pass then, from Article V, which provided that a portion of his property should be left in trust, to Article XV, in which the gifts, with one exception, were outright. He directed the division of his residuary estate into fourteen equal parts, one for the widow, one for each of his children and the issue of deceased children. The only exception to a direct gift is in this provision for Neil: "I give, devise and bequeath one-fourteenth thereof unto my wife, Kathleen Lochrie, in trust for my son Neil Lochrie; PROVIDED however that payment of either the income or principal of the said one-fourteenth interest to said Neil shall be at the absolute discretion of my said wife." This share is claimed (1) by Irma S. Lochrie, widow of Neil, (2) by testator's widow, and (3) decedent's children contend that the bequest failed and fell into the residue pursuant to the Wills Act quoted above. The learned court adopted the last contention.

The general rule is that if payment to a beneficiary is left to the absolute discretion of the trustee, the ownership of the fund is not in the beneficiary; this is so because the fund was not given to him; he could receive only what the trustee should think fit to give. As Neil's mother was vested with absolute discretion, Neil, in his lifetime, could not have compelled her to make any payment to him so long as she acted in good faith. Neil's widow, who can only claim through her husband, is therefore not entitled to share.

On behalf of testator's widow, it is contended that, as her discretion to pay the income or principal to Neil

was absolute, she was "in substance the absolute owner," notwithstanding the words of the trust. The contention must be rejected because the gift is not absolute in words and the court must, if possible, give effect to all his words; there is no statement anywhere in the will that this share was intended to go to her outright. Such award would set aside the expressed intention of distributing equally this part of his property among widow, children and issue of deceased children. If testator had intended to give this share to his widow he would have said so without qualification, as he did, a few lines above, in giving her a one-fourteenth part. If the words at the beginning of the provision be regarded as ordinarily sufficient to create a trust for Neil, they are later so qualified as to show an unmistakable intention that a trust for Neil should come into being only at the "absolute discretion" of testator's widow; the contingency is clearly stated; the testamentary act—the proposed gift of a share to his wife in trust for Neil—was not, by itself, intended to be sufficient to create such a trust; he intended that an additional act should be required to complete the trust and that supplementary act, he declared, should be performed by his wife, in whom he vested "absolute discretion" to exercise the power; in the absence of her supplemental act, therefore, the creation of the trust remains incomplete and the subject of the bequest, not being disposed of, is distributable as part of the residuary estate. Compare *Kelley's Estate*, 253 Pa. 466, 98 A. 687. On behalf of the widow, cases are cited for the principle that "The discretionary power in a trustee to give or withhold is incompatible with the existence of a valid trust." By that principle, there would be no trust for Neil, but that fact does not convert the testator's words into an absolute bequest for his widow. The gift was, in the words of the Wills Act (supra), "incapable of taking effect" and went to the residuary legatees.

Four of the appeals are from a declaratory judgment, construing Articles I, V and XV of the will, entered on the petition of Irma S. Lochrie, widow of Neil. The petition for such judgment was presented to the court after the executor's account had been filed and after the auditor had been appointed, and therefore after the jurisdiction of the Orphans' Court had attached for the purposes of distribution; in the exercise of that jurisdiction, the will was before the court for construction; in such circumstances the Declaratory Judgment Act of 1923, P. L. 840, as amended April 25, 1935, P. L. 72, 12 PS section 836, does not permit the proceeding.

In Numbers 165 and 168, the decree of distribution is directed to be modified as stated in the opinion; in other respects it is affirmed, costs to be paid out of the fund for distribution.

Number 145, quashed because the appeal is joint.

Numbers 104, 105 and 124, dismissed.