## Lochrie's Estate.

Argued March 25, 1941; reargued September 29, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Clarence L. Shaver,* of *Shaver & Heckman,* with him *Richard J. Turk, Jr.,* and *Stephen C. Huestis,* of *Mitchell, Taylor, Capron & Marsh,* for appellants.

*Budd B. Boose* and *Charles H. Uhl,* of *Uhl, Ealy & Uhl,* with them *Truscott, Trinkle & Wright, Frank S. Lucente, William B. Paul, Joseph D. O'Connell* and *Edwin B. Goldsmith,* for appellees.

OPINION BY MR. JUSTICE MAXEY, April 14, 1941:

This is an appeal by the Empire Trust Company of New York and the National City Bank of New York, Trustees, from the decree of the Orphans' Court of Somerset County sustaining certain exceptions to the report of the auditor in distributing a balance shown by the first and partial account of the executors of the last will and testament of John Lochrie, deceased.

The testator, John Lochrie, had been married twice and died as a resident of Somerset County on September 30, 1937. His will was dated May 17, 1933, and the codicil thereto November 7, 1935. He was survived by his widow, Kathleen Lochrie, and by eleven of his fifteen children, three sons and eight daughters, and by the children of two sons, William Lochrie and John Lochrie III, who predeceased him.

The testator on May 19, 1922, created two inter vivos trusts (1) with the National City Bank of New York as trustee, by the terms and conditions of which the five surviving children by his second marriage were each the beneficiaries of the income during their lifetime, with a power of disposition by his or her will of one-third of the principal thereof to the wife or husband of such beneficiary; and (2) with the Empire Trust Company of New York City for the benefit of the widow, Kathleen Lochrie, with directions that upon her death, the trustee should divide the principal of said trust into as many parts or shares as would make one equal share for each of seven of his children naming them.

In Article IV of the will, the testator provides: "I authorize and direct that my executors shall, from the assets of my estate, purchase and acquire Bonds of the United States of America bearing the higher rate of interest in the amount of Three Hundred Fifty Thousand Dollars ($350,000) par value, which Bonds shall be distributed, delivered and paid over by my Executors to Trustees and Legatees."

The auditor, who was appointed by the court to settle exceptions and make distribution of the moneys remaining in the hands of the executors for distribution as shown by the first and partial account, construed in his 28th finding of fact and 6th conclusion of law Article IV of the will as requiring the executors to purchase United States Treasury Bonds of 1947-52, bearing $4\frac{1}{4}\%$ interest, these being those bonds of the United States which bear the highest rate of interest. The auditor's reasoning is as follows: "Clearly this [provision in the will as to the purchase of bonds] could mean only United States Treasury Bonds $4\frac{1}{4}\%$ of 1947-52, because they are the only bonds that are higher in their interest rate than any other bond." The market price of these bonds was, on January 8, 1940, $120.00 per one hundred dollar bond.

The Trustee, the National City Bank of New York, filed a number of exceptions to the report of the auditor,

but none of them are relevant in the present appeals, as such matters were decided by this court in *Lochrie's Estate,* 340 Pa. 145, 16 A. 2d 133.

The executors and others of the heirs filed exceptions to the auditor's findings, claiming that he erred in his interpretation of Clause IV of the will and that the bonds which the auditor designated are not bonds bearing the "higher" rate of interest as required by that clause but bonds bearing the "highest" rate of interest.

The auditor overruled the exceptions but the court below sustained them, saying: "It appears that United States Treasury Bonds of 1947-52 4¼% are commanding a premium of $20.00 or more on the par value per $100.00; and to carry out the testator's directions that $350,000.00 be invested in the purchase of United States Bonds bearing the highest rate of interest, as concluded by the auditor, would require an additional investment of $70,000.00 to pay the premium on said bonds. Considering the probable value of the unconverted assets of the estate, it is doubtful if the executors can carry into effect the testamentary provisions of the testator, if they are required to purchase United States Bonds bearing the highest rate of interest. It is our considerate conclusion, that it is the duty of the executors, in carrying out the mandatory direction of the testator's will, to purchase Bonds of the United States, bearing the 'higher' but not the 'highest' rate of interest; and that said executors have authority, in the exercise of sound discretion, to determine which of the bonds bearing the higher rate of interest shall be purchased and delivered to the Trustees." The court thereupon redistributed the funds allocating the balance to the purchase by the executors of bonds of the United States bearing the "higher" rate of interest, and when purchased to deliver the same to the trustees to be held in trust for the named beneficiaries. This appeal followed.

We find that the trustees have no standing to take an appeal in this case. Section 22(a) of the Act of June

7, 1917, P. L. 363, 20 PS section 2601, provides, inter alia: "Any party aggrieved by the definitive sentence or decree of any orphans' court or his legal representatives, may appeal therefrom to the proper appellate court within six months from the time of pronouncing such final sentence or decree." The trustees are not aggrieved parties within the meaning of this act. See *Stineman's Appeal*, 34 Pa. 394; *Bower's Est.*, 48 Pa. Superior Ct. 394; and *Wick's Est.*, 50 Pa. Superior Ct. 614; *Levan's Est.*, 314 Pa. 274, 171 A. 617; and *Kennedy's Est.*, 328 Pa. 193, 194 A. 901. In *Mellon's Appeal*, 32 Pa. 121, this court held that an assignee or trustee, having no beneficial interest in the trust, cannot appeal from a decree distributing the trust funds in his hands.

Lacking a beneficial interest in the trusts (see *Lochrie's Est.*, supra), the trustees cannot be aggrieved by the decree they have appealed from. Therefore, they are not qualified to appeal.

The appeals are quashed at the cost of the appellants.

PER CURIAM, November 24, 1941:

After re-argument, we find no reasons to change the opinion and decree heretofore filed in this case.