## Lochrie Estate.

Argued September 29, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*William N. Trinkle,* with him *Frank F. Truscott* and *W. Curtis Truxal,* for appellant.

*William B. Paul,* with him *C. N. McCune,* of McCune, Hiaasen & Fleming, and *Budd B. Boose,* for appellees.

OPINION BY MR. JUSTICE DREW, October 31, 1944.

Kathleen Lochrie, widow of John Lochrie who died testate on September 20, 1937, alleging that she turned over, out of her own funds, the sum of $25,000 to testator on August 29, 1928, and that he never returned the money to her, presented a claim for its recovery against his estate at the audit of the Second and Third Partial Accounts of the executors. After hearing, the learned Orphans' Court of Somerset County upheld the action of

the executors in refusing to pay the claim and dismissed the exceptions filed by claimant to these accounts. She then took this appeal.

A careful reading of the record shows the following to be the pertinent facts: Mrs. Lochrie, the claimant, was named beneficiary of a policy of insurance of the Bankers National Life Insurance Company on the life of her son, Thomas Clair Lochrie, who died, as the result of an accident, on May 1, 1928. About June 7, of that year she received from the insurance company a check for $25,000, representing the proceeds of the policy, which she deposited in her own account in the Windber Trust Company, Somerset County. On August 29, 1928, she issued a check for $25,000 on her account to her husband, testator, and he endorsed and deposited it in the same bank in his own name. This is the money which Mrs. Lochrie claims her husband never returned to her and which is the basis of the present controversy. Mr. Lochrie did not maintain, to any extent, any books or records of his financial transactions with his wife. The evidence adduced shows that he made many payments to her subsequent to this transfer of the $25,000 to him. From the records, cancelled checks and check-book stubs available it appears that checks were issued to Mrs. Lochrie by her husband, endorsed by her and deposited in her account between September 18, 1928, and June 11, 1935, the aggregate sum of over $18,000. Check-book stubs showed that $5,500 of this amount was given to Mrs. Lochrie in payment of a loan. There were other payments made by Mr. Lochrie to his wife over a considerable period of time, but no cancelled checks, stubs or other records could be found. Prior to the time Mrs. Lochrie turned over the $25,000 to her husband, he had made numerous investments for her benefit, among which were the following: He placed $105,000, par value of United States Liberty Loan Bonds, due 1938, in the hands of a trustee under a deed of trust dated May 19, 1922, and directed such trustee to pay to his wife the

net income and dividends therefrom for life. He purchased in February and March, 1928, three orange groves in Florida, and took title in his wife's name, for a total consideration of $64,500, of which amount he paid $26,-500 upon delivery of the deeds, and the balance of $38,-000 due on purchase-money mortgages he paid some time after the receipt of the $25,000 he received from Mrs. Lochrie. He bought, for the sum of $15,000, 100 shares of stock in the Broward Bank & Trust Company of Fort Lauderdale, Florida, which stock he placed in the name of his wife. Two houses in New York State were purchased by him and title taken in his and his wife's names as tenants by the entireties, of which properties Mrs. Lochrie became sole owner upon the death of her husband. One of these houses was bought in 1920 or 1921 and is of the appraised value of $16,000; and the other was acquired in 1929 for an unknown consideration, but upon which there was a purchase-money mortgage in the sum of $13,000, which, however, had been reduced to $5,000 at the time of Mr. Lochrie's death.

By his will dated May 17, 1933, testator, among other things, gave, devised and bequeathed to his wife, claimant, a life estate in three houses in Fort Lauderdale, and also in his house in Windber, together with all furniture and furnishings. Testator also authorized and directed his executors to purchase and acquire out of the assets of the estate bonds of the United States in the sum of $350,-000, and gave and bequeathed $25,000 of those bonds to a trustee, to be held in trust for Mrs. Lochrie. He also devised and bequeathed to her a 1/14th share of his residuary estate, and nominated her as one of the six executors of his estate. Testator and his wife, contemporaneously with the execution of this will, entered into a written post-nuptial agreement. In this agreement it was recited that Mrs. Lochrie had heretofore received from her husband certain securities, moneys and other property of considerable value, commensurate with his means, fortune and material resources; that she was

familiar with the business and properties owned by her husband; that she had read and fully understood and approved the provisions of his will; and that she was aware that as surviving spouse she had the right to take against his will, but was satisfied not to do so. It was further provided that in consideration of the premises and the mutual agreement of her husband to release all claims, right and interest he might have in her estate, as surviving spouse, Mrs. Lochrie did thereby "covenant and agree to accept the provisions made for me by said Will as in full satisfaction and payment of all my rights and interest in his estate in event of his death, and I do hereby release and renounce all claim against his estate for dower and for any and all statutory interest therein to which I might otherwise be entitled to as his surviving widow."

Mrs. Lochrie, in the spring of 1938, expressed her dissatisfaction with the provisions made for her in the will and advised the other executors and beneficiaries of her intention to take against it, unless she was given a portion of the estate satisfactory to her. On August 4, 1938, at a meeting of the executors and beneficiaries, Mrs. Lochrie agreed that upon the transfer to her of property of the appraised value of $13,125 and cash in the sum of $36,875, she would accept all the terms of the will and would renounce her right to dissent thereto, and "to renounce any and all other claims she may have against the Estate either in Pennsylvania, Florida or elsewhere." The minutes of the action taken at this meeting were reduced to writing and signed by all the parties present. The following day a formal agreement, embodying the terms of settlement agreed upon at the meeting, was prepared and duly executed by all the beneficiaries, including Mrs. Lochrie.

On August 6, 1941, Mrs. Lochrie, in a letter written by her counsel to one of the executors, made claim against the estate for the $25,000 here in question, with interest from August 29, 1928. Until that time she never

made known this claim to her co-executors, notwithstanding the fact of her active participation for a period of almost four years in the administration of the estate. Furthermore she did not make known her claim for this $25,000 when she filed exceptions to the decree of distribution entered by the court below at the audit of the First and Partial Account filed by the executors on May 4, 1939, claiming a portion of the fund for distribution because of the death of a son, Neil Lochrie, and also appealed to this Court in that controversy (*Lochrie's Estate*, 340 Pa. 145, 16 A. 2d 133).

A reading of the provisions of the compromise agreement entered into by Mrs. Lochrie and the other beneficiaries, in August, 1938, shows conclusively that she released her husband's estate from any and all claims whatsoever, including that for the $25,000 which she here seeks to recover, and for this reason, if for no other, the learned court below committed no error in dismissing her exceptions filed to the Second and Third Partial Accounts. Reading the minutes and the agreement together, as we must under the circumstances, it is perfectly clear that what the parties contemplated was a settlement of family differences and the closing forever of the door upon all matters which might promote friction and lead to litigation. This agreement is a valid and enforceable contract, freely and voluntarily entered into by Mrs. Lochrie, for a valuable consideration paid to her, and by the terms thereof, she released "any and all other claims she may have against the Estate". Therefore, it is a bar to recovery upon her present claim.

In this disposition of the case, we deem it unnecessary to consider: first, whether the testator was a trustee of the money turned over to him by his wife or whether it was intended merely as a loan to him, or what amount was actually returned to her; second, whether this claimant, Mrs. Lochrie, released her claim by the provisions of the post-nuptial agreement which she and her hus-

band executed in May, 1933, or what effect, if any, the codicil executed by testator on November·7, 1935, had upon such agreement; third, whether the doctrine of equitable estoppel is a good defense here in view of the fact that Mrs. Lochrie permitted the other beneficiaries under her husband's will to enter into the compromise agreement in August, 1938, without revealing to them her claim for $25,000; and, fourth, whether Mrs. Lochrie was guilty of laches under the circumstances here presented.

Decree affirmed.