## Shore Estate (No. 2)

*Leonard F. Markel, Jr.*, and *Richard R. Malis*, for accountants.

*Wright, Mauch, Hawes & Spencer* by *Franklin L. Wright* and *Roper & Caldwell* by *Wesley H. Caldwell*, for exceptants.

HOLLAND, P. J., and VAN RODEN, P. J. (specially presiding), March 30, 1951.—Decedent died March 4, 1948, survived by his widow (who has since remarried). At the audit of the executors' first and final account, the widow presented a claim in the sum of $1,998.78 which she asserted was the amount of a Federal income tax refund due to her personally by reason of overassessments for the years 1944 and 1945, but which, instead of being refunded to her, were applied against deficiencies in decedent's income tax payments for those years.

A hearing on this claim was held on November 14, 1950, and upon the basis of the testimony submitted and the other evidence in the case, the auditing judge (van Roden, P. J., Orphans' Court of Delaware County, specially presiding) allowed the claim and directed the accountants to pay to the widow in reimbursement the sum of $1,998.78 out of the assets of decedent's estate.

An exception to the adjudication nisi has been filed on behalf of decedent's brothers and sister (residuary legatees), who dispute the sufficiency of the evidence submitted in support of the claim and also argue that any recovery on such claim is precluded by a family settlement agreement.

Written briefs and oral argument on the exception were submitted to the court en banc (Holland, P. J., and van Roden, P. J.). After full and careful consideration and review of the entire matter, the court has reached the conclusion that the allowance of the

claim by the auditing judge was proper and just, fully warranted by the evidence, and must be affirmed.

At the aforesaid hearing, the widow introduced in evidence (exhibit A-1) a certificate of overassessment no. 1981608, issued to her by the Commissioner of Internal Revenue, which discloses on its face that there was an allowance of an overassessment in the amount of $1,039.77 on the income tax return of Minerva R. Shore (decedent's widow) for the year 1944, that the excess payment was not refunded to her by the Treasury Department, but that the sum of $745.19 thereof was credited against the income tax deficiency of Sol Shore (decedent) for the year 1944 and the balance of $294.58 credited against his tax deficiency for the year 1945. The widow also introduced in evidence (exhibit A-2) a certificate of overassessment no. 1981854, issued to her by the Commissioner of Internal Revenue, which discloses on its face the allowance of an overassessment in the amount of $959.01 on the widow's income tax return for the year 1945, that the excess payment was not refunded to her by the Treasury Department but was credited against decedent's 1945 income tax deficiency.

Since there was no objection whatsoever to the admission in evidence of the certificates of overassessment, it must be assumed that exceptants do not question the authenticity or the probative value thereof. Accordingly, the auditing judge was fully justified in finding, solely upon the basis of the certificates of overassessment, that credits belonging to the widow were applied against decedent's liabilities and that she is justly entitled to reimbursement to the extent thereof. It is noted that claimant also testified, without objection from counsel for present exceptants, that the amounts set forth in the certificates of overassessment were never repaid to her by decedent in his lifetime nor by his estate after his death, and were not refunded to

her by the Commissioner of Internal Revenue. Under such circumstances, it seems clear that the widow is entitled to reimbursement.

At the aforesaid hearing, exceptants did not question the application of the widow's overpayments to decedent's tax deficiencies, but contented themselves with introducing in evidence a written agreement dated March 7, 1949, between the widow and the other beneficiaries of the estate, amicably settling certain controversies concerning claims and liabilities with respect to decedent's estate. They also introduced in evidence a supplemental agreement dated June 30, 1949, wherein the parties ratified the previous agreement and further stipulated for the withdrawal of the widow's election to take against the will.

Family agreements are favored by the law and, where freely and voluntarily entered into for a valuable consideration, will be upheld by the courts: Lochrie Estate, 350 Pa. 456, 460 (1944). If in the instant case, the widow had renounced any and all other claims she might have had against the estate in addition to the claims specifically set forth in the family settlement agreements, it would have created an effective bar to recovery upon her present claim: Lochrie Estate, supra. But, a perusal of the agreements in the instant case discloses no intention whatsoever that they be construed as a general release of claims on the part of the widow. The agreement of March 7, 1949, recites that "disputes have arisen as to *certain* claims and liabilities alleged and which claims and liabilities have been denied by various individuals" and "it is the desire of all the parties hereto to terminate the controversy as to *these* claims and liabilities and to set out their respective interests therein, if any". (Italics supplied.) The agreement then disposes of seven specific claims or alleged liabilities. There is no provision whatsoever, specific or general, which

could possibly be construed as applying to the widow's claim for reimbursement arising from the application of her tax refunds to decedent's tax deficiencies. The supplemental agreement of June 30, 1949, recites that "the said Agreement dated March 7, 1949 was intended to be the final settlement of all disputes between the parties hereto, but by inadvertence a provision that Minerva Shore was to elect to take under the will of said decedent was omitted, and by further inadvertence she filed her election to take against said Will", whereupon the widow then agreed "to withdraw said election to take against the decedent's will and to file an election to take under said will", and "in all other respects the said Agreement of March 7, 1949, is hereby ratified".

It is not without significance that the parties signatory to the written agreement do not include the executors in their representative capacity. It is likewise not without significance that the agreements make no reference whatsoever to any claims against the estate. The parties stipulated and agreed that a certain promissory note of Al Rothman "made payable to Minerva Shore and now in her possession, is her own, absolute property", and also that "on liquidation of Sol Shore, Inc., the liquidating dividend payable to Minerva Shore, for the one hundred sixty-five (165) shares registered in her name is to be paid unto Minerva Shore in her own individual right and is her own absolute property". There is no mention of any claim of either Minerva Shore or any other person against the *estate*. The agreement also recites that: "This writing constitutes the entire agreement between the parties and there are no understandings or agreements, oral or otherwise differing herefrom, nor are there any such agreements and understandings except as they are set forth herein".

This provision leaves little room for any inference that there was any agreement or understanding of the parties with respect to the widow's claim relating to the tax refund. In any event, the tendency of our courts is to construe family agreements favorably to decedent's widow. See Cooper's Estate, 147 Pa. 322, 325 (1892); Hunter's Pennsylvania Orphans' Court Commonplace Book, Vol. 1, p. 526, et supp. The auditing judge was correct, therefore, in not considering the agreements as a bar to the widow's recovery.

Accordingly, the court enters the following

### Decree

And now, to wit, March 30, 1951, the exception to the adjudication nisi in the above estate having come on to be heard, considered and disposed of by the court en banc, it is hereby ordered, adjudged and decreed as follows:

1. The exception of Herman I. Shore, Samuel Shore and Jennie Paul to the adjudication nisi dated January 5, 1951, in the above estate, is hereby dismissed.

2. The adjudication of January 5, 1951, is hereby ratified and confirmed absolutely.