[J-72-2021] [MO: Wecht, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

EDWARD J. O'DONNELL

v.

ALLEGHENY COUNTY NORTH TAX
COLLECTION COMMITTEE, AND
BOROUGH OF FOX CHAPEL AND FOX
CHAPEL AREA SCHOOL DISTRICT


APPEAL OF: BOROUGH OF FOX CHAPEL
AND FOX CHAPEL AREA SCHOOL
DISTRICT

: No. 8 WAP 2021
:
: Appeal from the Order of the
: Commonwealth Court entered
: December 18, 2020 at No. 880 C.D.
: 2019, reversing the Order of the
: Court of Common Pleas of Allegheny
: County entered June 11, 2019 at No.
: SA-17-001040.
:
: ARGUED: October 27, 2021
:
:
:
:

## DISSENTING OPINION

**JUSTICE TODD**

The majority finds that the definition of "compensation" in Section 303 of the Tax Reform Code, 72 P.S. § 7303(a)(1)(i) ("Tax Code"), unambiguously includes *qui tam* payments, rendering such payments "earned income" subject to taxation under the Local Tax Enabling Act, 53 P.S. § 6924.501 ("LTEA"). Unlike the majority, but consistent with the Commonwealth Court below, in my view, the relevant language of the Tax Code is sufficiently ambiguous in this regard such that the taxpayer herein should benefit from the principle that tax statutes be "construed most strongly and strictly against the Government and any reasonable doubt must be resolved in favor of the taxpayer." *In re Good's Estate*, 182 A.2d 721, 723 (Pa. 1962); *see* 1 Pa.C.S. § 1928(b)(3) (provisions imposing taxes are to be strictly construed). Thus, I would construe the statute in favor of O'Donnell and

conclude that *qui tam* payments do not constitute compensation under Section 303(a)(1)(1). Accordingly, I must dissent.

As the majority notes, Section 303 sets forth eight different classes of income subject to state personal income tax, including, as pertinent herein, "compensation," which it defines as "[a]ll salaries, wages, commissions, bonuses and incentive payments whether based on profits or otherwise, fees, tips and similar remuneration received for services rendered whether directly or through an agent." 72 P.S. § 7303(a)(1)(i). Neither party disputes that *qui tam* payments are not explicitly listed in this definition. Nevertheless, the majority concludes that *qui tam* awards unequivocally constitute taxable compensation under Section 303, finding definitively that they are an incentive payment. I do not agree that the proper characterization of *qui tam* awards for tax purposes is so clear.

The majority finds that *qui tam* awards are an incentive payment, and, thus, compensation under Section 303, because they financially incentivize a relator to make a claim under the False Claims Act ("FCA") and to provide the federal government with information related thereto. For the reasons the majority offers, this is certainly a reasonable interpretation of Section 303. In my view, however, there are other reasonable interpretations of the Tax Code implicated herein. First, the Tax Code's definition of compensation as imported into the LTEA reasonably suggests an employment relationship is required, which is absent here. Second, and regardless, a relator's actions in connection with a *qui tam* lawsuit can reasonably be viewed as providing services to the relator himself, and not to the federal government.

Distilled to its essence, Section 303 provides that "compensation is something which is received for services rendered." *Commonwealth v. Staley*, 381 A.2d 1280, 1282 (Pa. 1978). While Section 303 contains no express requirement that compensation must

be received through an employment relationship, and although Section 303 does not define "services," the other categories of compensation included in the provision — salaries, wages, commissions, bonuses, incentive payments, fees, and tips — appear to have an employment nexus, suggesting that the catch-all language "similar remuneration received for services rendered" does as well.

Furthermore, in defining "earned income," Section 501 of the LTEA expressly references both the definition of compensation in Section 303 of the Tax Code *and* the Code's accompanying rules and regulations. *See* 53 P.S. § 6924.501. The above employment-focused view of the Tax Code is consistent with the definition of "compensation" in its controlling regulation, which focuses more overtly on an employment relationship:

> Compensation includes items of remuneration received, directly or through an agent, in cash or in property, based on payroll periods or piecework, for services rendered as an employee or casual employee, agent or officer of an individual, partnership, business or nonprofit corporation, or government agency. These items include salaries, wages, commissions, bonuses, stock options, incentive payments, fees, tips, dismissal, termination or severance payments, early retirement incentive payments and other additional compensation contingent upon retirement, including payments in excess of the scheduled or customary salaries provided for those who are not terminating service, rewards, vacation and holiday pay, paid leaves of absence, payments for unused vacation or sick leave, tax assumed by the employer, or casual employer signing bonuses, amounts received under employee benefit plans and deferred compensation arrangements, and other remuneration received for services rendered.

61 Pa. Code § 101.6(a). In my view, the ambiguity in this regard – whether "compensation" requires an employment nexus – redounds in O'Donnell's favor as I reject

the Taxing Authorities' argument[1] that a *qui tam* relator's role in initiating and participating in the litigation renders them an employee or agent of the government.

At any rate, regardless of whether the remuneration is deemed to be an incentive payment as the majority concludes, it is undisputed that under the Tax Code such remuneration must be given in exchange for "services rendered." 72 P.S. § 7303(a)(1)(i). In one respect, and as the majority illustrates, the *qui tam* relator's actions in initiating and participating in the *qui tam* action under the FCA and providing the federal government with information related thereto can be viewed as a service to the federal government, as the relator's actions in this regard aid the federal government in identifying and combating fraud, and as the relator may receive a percentage of the proceeds of the action or settlement based upon "the extent to which [he or she] substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1).

On the other hand, however, as the high Court observed in *Stevens*, a *qui tam* relator "has a concrete private interest in the outcome of the suit." *Vermont Agency of Natural Resources v. Stevens*, 529 U.S. 765, 772 (2000) (internal quotation marks omitted). Indeed, the Court observed the FCA provides that:

> [a] person may bring a civil action for a violation of section 3729 *for the person and for the United States Government,*" § 3730(b) (emphasis added); gives the relator "the right to continue as a party to the action" even when the Government itself has assumed "primary responsibility" for prosecuting it, § 3730(c)(1); entitles the relator to a hearing before the Government's voluntary dismissal of the suit, § 3730(c)(2)(A); and prohibits the Government from settling the suit over the relator's objection without a judicial determination of "fair[ness], adequa[cy] and reasonable[ness]," § 3730(c)(2)(B).

---

[1] Like the majority, I refer to the Borough of Fox Chapel and the Fox Chapel School District collectively as the "Taxing Authorities".

*Id.* at 772 (quoting 31 U.S.C. § 3730). As a result, regardless of the government's participation, the relator remains substantially personally vested in the litigation. Moreover, as the high Court also found, the "FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim," providing the relator with a direct financial interest in the outcome of the case as a plaintiff. *Id.* at 773. In my view, a plaintiff in a lawsuit, brought in his name, with (in some circumstances) exclusive control over it, who is personally invested in its outcome, and who has a direct financial interest in the damages award funded not by the government but by the defendant, can be viewed as principally serving himself and not the federal government. From this perspective, a *qui tam* plaintiff receiving an award is not being remunerated for services rendered under the Tax Code.

Again, I accept that the majority's conclusion that a *qui tam* plaintiff provides services to the federal government under Section 303 to be a reasonable one. But, in my view, the alternative interpretation – that a *qui tam* plaintiff is principally serving himself and not the government – is also reasonable. As a result, I consider Section 303 to be ambiguous in this respect as well.

Herein, Taxing Authorities advanced no less than three differing and inconsistent theories as to why they consider *qui tam* payments to be taxable compensation: that the *qui tam* award is compensation for services O'Donnell rendered as a *qui tam* plaintiff generally; that it is compensation for services O'Donnell rendered while working as an agent or employee of the federal government; and that it is compensation in the form of an incentive payment. For the above reasons, I find the relevant provisions of the Tax Code to be susceptible to multiple reasonable, but conflicting, interpretations. Yet, tax laws "are to be construed most strictly against the government and most favorably to the taxpayer, and a citizen cannot be subjected to a special burden without clear warrant of

law." *In re Husband's Estate*, 175 A. 503, 506 (Pa. 1934). Because I consider the tax consequences of *qui tam* payments under Section 303 to be less than clear, I would find in favor of O'Donnell. Accordingly, I dissent.

Chief Justice Baer and Justice Donohue join this dissenting opinion.